R. J. & J. McCAMY, contra.

------

## CROWDER v. KEYS.

" Where there is no debt of another, present, past or prospective, there can be no collateral promise to pay it. The promise proved in this case was original, not collateral." *Buchanan* v. *Sterling*, 63 *Ga.* 227. That case controls this one.        *Judgment reversed.*
February 20, 1893.

Before Judge JANES. Walker superior court. August term, 1892.

Suit by Dr. Crowder against Rachel M. Keys, on an account for medical services to James Keys. Nonsuit was granted, and the plaintiff excepted. The ground of the motion for nonsuit was, that the case was within the statute of frauds. The evidence is, in brief, as follows : The defendant told one Mallicoat to go after Dr. Crowder and ask him to come and see her son, J. M. Keys, a widower about 35 years old, who was then living in the house with her, and was very sick with typhoid fever. She said for Mallicoat to tell Dr. Crowder that she would see that he was paid, if he would come and wait on her son; that she had her home, mules, cattle, wagon and crop; and that if he would come she would see that he was paid. Mallicoat went and told Dr. Crowder that he had come for him

to go to see J. M. Keys. He at first said he could not go, that it was too far (about nine miles), and that he did not know J. M. Keys. Mallicoat then told him what the defendant had said, and he said he would go. He continued to visit J. M. Keys almost daily for over six weeks, when the patient died. Mallicoat heard the defendant several times tell Dr. Crowder to give Jim good attention and she would pay him. She told Mallicoat, after the death of J. M. Keys, to see Dr. Crowder and tell him she wanted to see him and pay him for waiting on Jim during his sickness; and Mallicoat did so tell him. At the time of the first visit, when the doctor started to leave, the defendant followed him out on the porch and said to him that she wanted him to give Jim good attention, and that she would see that he (the doctor) got every cent of his money. He first went relying on what Mallicoat told him, and afterwards continued to go relying on the promise of defendant, made to him on his first visit, in regard to his pay. During the time of the visits she said to him: "Give Jim good attention, and if he lives you will get your pay, and if he dies I will see you paid; in any event I will see that you get your pay. I have plenty of property to pay all my debts." After the death of J. M. Keys, upon being told that defendant wanted to see him the doctor went to see her, and she said to him that she wanted to pay him but had no money, but that she had mules, cattle, wagon, harness, a cart and a crop, and she wanted him to take the cart, cattle, mules, harness or anything until he was satisfied. He told her he had more stock than he needed, and would not trade for the stock. One witness testified that he heard the defendant tell the doctor often while he was waiting on J. M. Keys, to give him good attention and she would pay him until he was satisfied. Another testified that she told him, after the death of J. M. Keys, that she owed

Dr. Crowder for waiting on J. M. Keys, and told witness to tell the doctor to go and see her and get his pay, that she wanted to pay him. Another testified that she said to him, after J. M. Keys' death, that she owed Dr. Crowder for waiting on J. M. Keys while he was sick, that she had mules, cattle, wagon and crop and her land, and that she had promised to pay Dr. Crowder if he would wait on Jim, and she intended to do it. She talked with witness several times about this matter, and always said she had promised Dr. Crowder that she would see that he was paid, that she intended to pay him, that she wanted the doctor paid, and then she wanted J. M. Keys' daughter to have balance of her property. Another testified that, soon after the death of J. M. Keys, the defendant talked with witness at least five times about owing Dr. Crowder, and in these conversations she said that Dr. Crowder had been very faithful in attending her son, and that she intended he should have his pay first; and told witness to tell him to come and take of her property until he was satisfied, that she had mules and wagon, harness and cart, cattle and hogs. Witness did not see the doctor but wrote him. Still another testified that she told him at his house, soon after the death of J. M. Keys, that she had promised Dr. Crowder that if he would wait on J. M. Keys and give him good attention, she would pay him, that the doctor had been very attentive and faithful, and that she intended to pay him if it took everything she had on the place and the land. In the testimony of Mallicoat appears the statement that "the mules, wagon, harness, cattle and hogs were sold by R. U. Dickerson as the property of J. M. Keys."

LUMPKIN & SHATTUCK and W. L. MASSEY, by HARRISON & PEEPLES, for plaintiff.

No appearance for defendant.