## SOUTHERN COAL AND COKE COMPANY *v.* RANDALL.

Where one person, desiring that certain shipments of coal be made to another, stated to the prospective vendor that if the shipments were made he would "guarantee the payment of the account," such an undertaking, in the absence of qualifying words or terms, or evidence showing that the promise was an original, independent undertaking, was in the nature of a guaranty, and not binding when not in writing.

NOVEMBER 15, 1913.

Complaint. Before Judge Pendleton. Fulton superior court. October 4, 1912.

The Southern Lime Manufacturing Company, hereinafter referred to as the Lime Company, was a corporation of Polk county, Georgia. Randall, the defendant, was a stockholder and the president of that corporation. The Southern Coal and Coke Company, hereinafter called the Coal Company, had been shipping coal to the Lime Company, and had a claim against it for unpaid bills. Pratt, a representative of the Coal Company came to Atlanta to make collection of the claim, and requested payment of Randall, who made certain statements as to the affairs of the Lime Company. After this, other shipments of coal were made to the Lime Company by the Coal Company. They were not paid for, and suit was brought aaginst Randall to recover the purchase-price of them. The testimony showed that Randall, after making to Pratt statements in the nature of an excuse for a failure of the Lime Company to pay its debts, stated further, that the Lime Company would "be on their feet pretty soon," that they liked this particular coal especially well, and that if the plaintiff would make additional shipments Randall would guarantee the payment of the account. Pratt testified further: "I took this matter up with my people, and told them that he was a man I regarded as a man of his word, and that he had a responsible position, and [I] felt sure we would be perfectly safe in making these shipments on his agreement to

pay for them himself. That was the entire conversation, or the substance of .it. We cut off future shipments entirely, and would not have made any additional shipments to the Southern Lime Manufacturing Company on their own responsibility. The reason future shipments were made was on the promise of Mr. Randall to pay for the coal. Plaintiff made shipments to Southern Lime Manufacturing Company after the promise of Mr. Randall, but I do not know the amount. . . Mr. Randall stated to me verbally that if we would make future shipments, that he would guarantee they were paid. . . Those shipments are handled by the shipping clerk. I did not make a shipment myself. So far as I know, the future shipments were made to the Southern Lime Manufacturing Company and charged to them." As to the liability for the future shipments, "we had nothing in mind except the promise of Mr. Randall to pay for those. If the Southern Lime Manufacturing Company did not pay for the shipments that had been made previously, and which were due at that time, and which he promised to pay in a few days. I do not know whether the future shipments were charged to Mr. Randall or not. I did not make any of the entries. We relied on Mr. Randall to pay for the coal. The plaintiff sued the Southern Lime Manufacturing Company for the shipments made previously to said 24th [of February, 1908], and for those subsequently made also, in the city court of Atlanta. I do not know whether future shipments were charged to the Southern Lime Manufacturing Company or to Mr. Randall. . . I communicated the facts contained in this new contract to the plaintiff in Knoxville, and it was necessary to do so in order to get future shipments. I took this matter up with them personally when I got back home, . . a few days after said 24th. I told them of the entire conversation . . I told the plaintiff that I believed that Mr. Randall was responsible for any guarantee he might make, and we would be perfectly safe in making any future shipments, and we would get our money. . . As near as I can get to the exact words used by Mr. Randall, they were these: 'If you will continue to make us shipments, so that we can operate the plant and fill some orders that we have got and get the thing in a little better shape, you will not lose any money by it. I will guarantee the payment of the account myself.'" It appeared that the Lime Company had been declared a bankrupt, and that the plaintiff proved in the bankrupt court the debt here sued on. The court, at

4

the conclusion of the evidence, granted a nonsuit, and the plaintiff excepted.

*Horton Brothers & Burress,* for plaintiff.

*Edgar A. Neely,* for defendant.

BECK, J. (After stating the facts.) It is clear from the testimony that the substance of Randall's undertaking or promise upon which the plaintiff bases the claim of a right to recover against him individually is embodied in the words, "If you will continue to make us shipments, so that we can operate the plant and fill some orders that we have got and get the thing in a little better shape, you will not lose any money by it. I will guarantee the payment of the account myself." The words "us" and "we," as used in this agreement, meant, evidently, the corporation in which Randall was a stockholder and of which he was president, and to which he was desirous of having other shipments of coal made. That being true, on the face of it the agreement or promise of Randall was an undertaking in the nature of a guaranty or suretyship; whether the one or the other need not be discussed here, for it is necessary, in order to render such an obligation or promise binding, that it be in writing. In the present case it rested in parol. The words, "I will guarantee the payment," imported the undertaking by one employing the expression to answer for the debt or default of another as a guarantor, in the absence of qualifying terms which might have the effect of showing that the undertaking was an original, independent one, and not collateral. Here there were no such qualifying terms. If it should be held that, under the language used by the parties, evidence was admissible to show that the word "guarantee" was not used in its legal signification, but that the real intent of the parties was that the promise was an original one, then there was no such evidence. On the contrary it may be inferred from the evidence that the coal was charged to the Lime Company, not to the defendant, for that company was sued in the city court; and when the Lime Company went into bankruptcy the plaintiff proved its claim in the bankrupt court, thus indicating that it considered the Lime Company as its debtor. In the petition the plaintiff clearly alleged an independent and original undertaking on the part of Randall to pay for the coal shipped after February 24, 1908; but there was no proof to sustain this contention, and the court did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concur.*