### 53071. CHASTAIN-ROBERTS COMPANY, INC. v. BETTER BRANDS, INC.

QUILLIAN, Presiding Judge.

Better Brands, Inc. brought an action in the Municipal Court of Columbus against Chastain-Roberts Co., Inc. The complaint alleged that the defendant was indebted to the plaintiff in the amount of $1,562.19 for beer delivered at the defendant's request to various retail outlets operated by Consolidated Customer Services, Inc. (Consolidated); that the businesses to which beer was

delivered were being operated by the defendant on the dates the deliveries were made by virtue of a voluntary surrender of the businesses to the defendant by authorized agents of Consolidated prior to the delivery dates and were being operated at the time of the deliveries by the defendant. Plaintiff therefore sought recovery of the amount allegedly owed. The plaintiff by amendment added a second count to the complaint which set forth that: on or about January 2, 1975 the defendant took possession of beer which had been delivered by the plaintiff to various stores operated under the name of Consolidated, which it failed to surrender to plaintiff and has converted the same to its own use; that the reasonable value of the property converted is $1,562.19; that the plaintiff demanded the surrender of the property within 10 days after discovering that the retail outlets had been padlocked and closed by the defendant but surrender of the beer was refused. This amendment sought recovery of the amount in question for unlawful conversion of the plaintiff's property.

The defendant answered and denied the material allegations of the complaint. By amendment defendant set forth the defense that the plaintiff was relying upon a promise by the defendant to be responsible for the debts of Consolidated, a third party; that such promise, if made, was not in writing and was therefore void and un-enforceable as provided by Code § 20-401 (2).

The case came on for trial before a jury and the following evidence was adduced. The plaintiff was engaged in the wholesale sale of beer to various retail grocery stores owned and operated by Consolidated. It was the practice of plaintiff to deliver the beer to Consolidated's various retail outlets and then five days later to submit its invoice to Consolidated's central office and there be paid. On October 1, 1974, Consolidated filed a petition seeking an arrangement with its creditors pursuant to Chapter 11, Federal Bankruptcy Act. Mr. Head, the president of the plaintiff, was aware of this and on September 30, 1974, personally delivered an invoice to Consolidated. He did not receive payment that day and returned the following day at which time he was introduced to Mr. Dan Johnson. According to Mr. Head's

testimony, he was told by Mr. Johnson that Johnson was an employee of the defendant, Chastain-Roberts, and that "he would check the invoices and that he would be paying me from then on." He explained that the President of Consolidated was in the office a part of the time when the discussion took place and was in apparent agreement with the arrangement. Mr. Head stated that he was informed that the president of Consolidated would no longer be paying but that Mr. Johnson would be. His testimony was: "He said, 'I will assure you that you will be paid and I will be responsible for paying you.'" After the meeting the plaintiff was paid by checks signed by Johnson and drawn on a different bank from that formerly used in paying the plaintiff.

Head then testified that this arrangement continued for several months and he was paid regularly and promptly until January 22, 1975. At this time Consolidated's petition in the bankruptcy court was dismissed. On the same day Consolidated voluntarily delivered its assets, consisting of machinery, equipment and grocery inventory, including the beer in question, to two secured creditors, First National Bank of Columbus and Chastain-Roberts. Thus, when Mr. Head brought invoices for deliveries made the preceding week he was not paid. Shortly after January 22, 1975, he returned to Consolidated's office and in conversation with Mr. Johnson was first told he would be paid but later told that he would not be. At this time he requested that he be allowed to pick up the beer. This request also was denied.

According to the testimony adduced in behalf of Chastain-Roberts, Mr. Johnson was employed by the defendant but the defendant in no way took over the business of Consolidated. Johnson was the retail accounting manager who had been sent by Chastain-Roberts to Columbus to help Consolidated set up a proper accounting system which would help protect the assets of Consolidated. Johnson's primary duty was to supervise a computer change-over at Consolidated and in line with that paid the checks for Consolidated, but in doing so did not act on behalf of the defendant Chastain-Roberts. In fact, Johnson was authorized by the board of directors and the president of Consolidated to

sign checks issued by Consolidated to pay its various creditors. The defendant contended it could not have taken over Consolidated since the federal court, after the date of October 1, 1974 to January 22, 1975 through its referee in bankruptcy, had control of the assets of Consolidated and all secured creditors had been enjoined from taking possession of any of the assets.

At the close of all the evidence Chastain-Roberts moved for directed verdict, which motion was denied. The jury then returned a verdict in favor of Better Brands, in the amount of $1,562.19. Chastain-Roberts filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was denied and appeal was taken. *Held:*

1. The defendant contends the court erred in refusing to give the following request to charge: "I charge you that where one person, such as Chastain-Roberts Co., Inc. in this case, desired that certain deliveries of beer be made to Consolidated Customer Services, Inc., another corporation, stated to the Plaintiff that *Chastain-Roberts Co., Inc. would see that Plaintiff got paid for the beer delivered,* such an undertaking in the absence of qualifying words or terms, or evidence showing that the promise was an original and independent undertaking amounts to a guarantee, and if the said guarantee was not in writing, then said obligation is not enforceable against Chastain-Roberts Co., Inc." (Emphasis supplied.)

In *Southern Coal &c. Co. v. Randall,* 141 Ga. 48 (80 SE 285), on which the defendant relies, the italicized language reads: ". . . he would 'guarantee the payment of the account . . .' " *Ross v. W. P. Stephens Lumber Co.,* 138 Ga. App. 748 (227 SE2d 486), also cited by the defendant, involves similar language guaranteeing payment of a bill. Both cases therefore are clearly distinguishable since "guarantee" was expressly used.

However, a different result obtains where language such as that contained in the request to charge is utilized. In numerous cases, our appellate courts have held that language similar to that found in the request imports that such promise constitutes an original undertaking, not a collateral one and is not within the Statute of Frauds. See e.g., "He will see that the debt is paid." *Cordray v. James,*

19 Ga. App. 156 (1) (91 SE 239); "She will see the bill paid." *Buchanan v. Sterling,* 63 Ga. 227, 228; "He would see it paid." *Maddox v. Pierce,* 74 Ga. 838; "I will see you paid." *Crowder v. Keys,* 91 Ga. 180, 181 (16 SE 986). Accord, *Hicks v. Walker,* 17 Ga. App. 391 (87 SE 152); *Easterling v. Bell,* 29 Ga. App. 465 (1) (116 SE 50).

In summary, a promise to answer for the debt of another must be in writing (Code § 20-401 (2)) unless there is an original undertaking by one to become primarily liable. *Kiser Co. v. Padrick,* 30 Ga. App. 642, 644 (8) (118 SE 791); *Moate v. H. L. Green Co.,* 95 Ga. App. 493, 504 (98 SE2d 185). Such question is for the jury. *Pate v. Fitts,* 52 Ga. App. 775 (184 SE 633). Where one "guarantees" another's debt there must be qualifying words or other evidence of an original undertaking. *Southern Coal &c. Co. v. Randall,* 141 Ga. 48, supra. But when the language used is "Chastain-Roberts Co., Inc. would see that Plaintiff got paid for the beer delivered" such terminology imports an original undertaking and, when credit is accordingly given, then there need be no writing to sustain the promise. *Cordray v. James,* 19 Ga. App. 156, supra; *Easterling v. Bell,* 29 Ga. App. 465 (1), supra.

It is therefore evident that the instant charge was not a correct statement of law abstractly or as applied to the facts of this case. A request to charge must be perfect and applicable to issues involved before an appellate court will reverse the trial court for the refusal to give it. *Durand v. Reeves,* 217 Ga. 492 (3) (123 SE2d 552). Accord, *Calhoun v. Cawley,* 104 Ga. 335 (2) (30 SE 773); *McMullen v. Vaughan,* 138 Ga. App. 718, 721 (227 SE2d 440), cert. den.

The trial judge properly refused to give the request to charge.

2. UCC § 109A-2—702 (2) (Ga. L. 1962, pp. 156, 223) provides: "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt." The defendant argues that plaintiff could not reclaim the property because the defendant was a lien creditor under UCC § 109A-2—702 (3) which reads: "The seller's right to reclaim under subsection (2) is subject to

the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (109A-2—403). Successful reclamation of goods excludes all other remedies with respect to them."

Turning to the referenced Code Section 109A-2—403 (4) (Ga. L. 1962, pp. 156, 415; 1963, pp. 188, 200; 1964, pp. 70, 74), we find a further reference to Article 9 of the UCC. There under UCC § 109A-9—301 (3) (Ga. L. 1962, pp. 156, 397) is the following definition: "A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of filing of the petition or a receiver in equity from the time of appointment."

Here the defendant had a perfected security interest in after-acquired property of Consolidated. But there is nothing in Code Ann. § 109A-9—301 (3) which includes a party with such status within the meaning therein expressed of a "lien creditor." See 6C Willier & Hart, U.C.C. Reporter-Digest, 2-598.11, § 2-702 Sales (Matthew-Bender & Co.); 25 Words & Phrases "Lien Creditor." See in this connection 3A Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers 13-26.2 et seq., § 13.03 [4] [ii], especially 13-29 (Matthew Bender & Co.). See also 4 Anderson's U.C.C., 233, § 9-301.10, Secured Transactions. See and compare *Gray v. Raper,* 115 Ga. App. 600 (155 SE2d 670); *Fas-Pac, Inc. v. Fillingame,* 123 Ga. App. 203 (180 SE2d 243).

We note that defendant has relied solely on the fact that it is a lien creditor and we are not called upon to decide whether it might otherwise be included in UCC § 109A-2—702 (3).

Under the facts here there was nothing to prevent a jury finding the plaintiff could and did rely on its right to reclaim under UCC § 109A-2—702.

It should be observed that the correct computation of time is not 10 days after discovery of insolvency, as alleged in the complaint, but 10 days after receipt. UCC § 109A-2—702 (2); 2 Anderson's U.C.C. 328, 330, §§ 2-702:12 and 2-702:16, Sales. Here, the evidence in regard to when precisely the demand for return was made is not

altogether clear. However, the appellant's brief states it was "shortly after January 22, 1975." Since we may accept this as true under Court of Appeals Rule 18 (b) (1) and the earliest date any portion of the goods was received as shown by the invoices was less than 10 days prior thereto, we find no basis to partially reverse because of a failure to meet the time limitation. Especially is this true since nothing as to this matter has been raised by the appellant.

There being some evidence to sustain the verdict, we affirm the judgment entered thereon.

*Judgment affirmed. Marshall and McMurray, JJ., concur.*

ARGUED NOVEMBER 3, 1976 — DECIDED JANUARY 14, 1977 — REHEARING DENIED FEBRUARY 4, 1977.

*Waldrep & Williams, Joseph L. Waldrep, Ronald M. Mack,* for appellant.

*Grogan, Jones, Layfield & Swearingen, Lee R. Grogan,* for appellee.