## 53928. LEWIS v. DAN VADEN CHEVROLET, INC.

QUILLIAN, Presiding Judge.

C. L. Lewis, trading as C. L. Lewis Construction Company, brought an action against Dan Vaden Chevrolet, Inc. in Chatham Superior Court. The complaint alleged that: the defendant corporation entered into a contract with Northwestern Construction Company (hereinafter referred to as Northwestern) for the construction of defendant's Chevrolet agency; Northwestern was the prime contractor for the construction; the plaintiff entered into a contract with Northwestern by which the plaintiff was to perform all necessary grading, fill and paving work in the construction of defendant's place of business. It was further alleged that: the original contract price of the

agreement between plaintiff and Northwestern was $42,000 which was subsequently increased by $15,963.13 to compensate plaintiff for extra work performed under the contract; Northwestern paid plaintiff the sum of $12,000 under the contract leaving a balance of $45,563.13; under the contract Northwestern was required to pay the plaintiff a certain sum each month but was constantly delinquent in making payments to the plaintiff; as a result of the prime contractor not paying the subcontractors, they stopped work.

It was further set out that: a meeting was held between the prime contractors and subcontractors at which Mr. Dan Vaden, the president of defendant corporation, was present; at the meeting the sub-contractors declined to continue work even though Mr. Vaden and the prime contractor requested them to return to work and advised them they were protected by a bond; Mr. Vaden, as president of defendant corporation, advised that it was imperative that his place of business open on schedule and in behalf of the defendant corporation assured the subcontractors, including the plaintiff, they would be paid for their work; relying on these assurances and the promise of payment, the plaintiff returned to work and completed it; the plaintiff had not been paid by the prime contractor, Northwestern, and although he demanded payment of defendant, the defendant had failed and refused to pay the plaintiff. The complaint sought recovery of the balance allegedly due under the agreement, $45,563.13.

The defendant answered and denied the material allegations of the complaint, and set forth, among its defenses, that the alleged agreement between the plaintiff and the defendant was in violation of the Statute of Frauds in that it was an oral agreement or promise to answer for the debt, default or miscarriage of another, which must be made in writing. The defendant subsequently moved for summary judgment which motion was overruled. The case then came on for trial before a judge and jury.

After the close of the evidence the trial judge, on motion of the defendant, directed a verdict in its favor. Judgment was duly entered on the verdict and the

plaintiff appealed to this court. *Held:*

The plaintiff contends that the agreement between him and the defendant was an original and not a collateral undertaking and thus is not within the Statute of Frauds. He relies on the rule as set forth in *Easterling v. Bell,* 29 Ga. App. 465 (1) (116 SE 50): " 'Where a person tells another to let a third person have goods, and that he will see that the debt is paid, and credit is accordingly given' exclusively to the promisor, 'the promise is an original and not a collateral undertaking, and is not within the statute of frauds.' "

The plaintiff further argues that, even if he can not recover under an original undertaking theory, since there was part performance on the contract, the Statute of Frauds would not come into play. His contentions in this regard are controlled adversely to him by *McGaughey Bros. v. Latham,* 63 Ga. 67; *Strauss v. Garrett & Sons,* 101 Ga. 307 (28 SE 850); *Coldwell Co. v. Cowart,* 138 Ga. 233 (75 SE 425).

The defendant makes two contentions: (1) that the agreement was a collateral undertaking in that it was a mere guarantee on its part to make payment in the event Northwestern failed to pay; (2) that if there was an original agreement it was between the plaintiff and Mr. Vaden, as an individual and not as a representative of the defendant corporation. In the latter connection it is urged that there is no evidence showing that Mr. Vaden was in any way acting for the corporation when he spoke to the plaintiff.

The evidence contained in the record shows Mr. Vaden denied that he in any way made any assurances on his behalf or that of the corporation with regard to payment being made. He stated that the only assurances he made were that the job was bonded and that the subcontractors could look to the bond.

The plaintiff related that at the meeting he told all concerned that he would not go back to work for Northwestern. He then stated " 'Well, if Mr. Vaden would guarantee me my money I'd go back to work.' I said 'That's the only condition I'd go back to work.' So Mr. Braziel, at that time, he asked the gentlemen — he said, 'Gentlemen, what do you think of this?' and when they agreed to give

me the money Mr. Vaden said, 'Okay' — he said, 'I'll see that you get your money.' He said, 'But I've got to have a grand opening on this job.' He said, 'I'll see that you get your money.' And that's why I went back to work, on Mr. Vaden's say-so." He also related in this regard: "But Mr. Vaden, the only guarantee he give me was he would see to it I got my money if they didn't pay me. . . So we was still looking, right then, we was still looking to Northwestern for the money."

He testified that he talked with Mr. Vaden some 5 or 6 days after the meeting: "Mr. Vaden told me not to worry about it, that he had seventy, some-odd thousand dollars of the money and that Northwestern would not get that money until he saw that we were satisfied on the job, that his sub was paid." On cross examination he answered affirmatively the question "it was at that meeting that you said Mr. Vaden made a guarantee to you?" and subsequently referred to the arrangement as a guarantee.

In considering the issues before us, we recognize the rule that on motion for directed verdict the evidence is construed most strongly in favor of the party opposing the motion. *Osborne v. Martin,* 136 Ga. App. 86, 88 (5) (220 SE2d 19); *Gray v. Atlanta Transit System,* 136 Ga. App. 573 (2) (222 SE2d 67). However, the testimony of a party offering himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague or equivocal. *Davis v. Akridge,* 199 Ga. 867 (2) (36 SE2d 102); *Partain v. King,* 206 Ga. 530 (1) (57 SE2d 617). This rule has been applied to a party opposing a motion for directed verdict. See *Johnson v. Curenton,* 127 Ga. App. 687, 690 (195 SE2d 279), where it was held: "The testimony of a party litigant which is inconclusive and ambiguous must, even as against a directed verdict, be construed more strongly against [him]." Accord, *Bennett v. Associated Foodstores,* 118 Ga. App. 711, 714 (2) (165 SE2d 581).

In this case the evidence in regard to the president's authority to act for the corporation and that he was acting for the corporation at the time he made the purported statements is vague and inconclusive. The burden was on the plaintiff to establish his authority to act for the corporation.

Nevertheless, even if this were not true, the agreement as related by the plaintiff is shown not to be an original undertaking but a collateral one. The plaintiff stated he wanted a "guarantee" from Mr. Vaden. He also stated that he was looking to Mr. Vaden if Northwestern did not pay him. It is true that statements such as "I'll see that he gets paid" and words to that effect (*Chastain-Roberts Co. v. Better Brands,* 141 Ga. App. 186 (233 SE2d 5), and cits.) are ordinarily indicative of an original undertaking, but the question is one of intent and whether the parties meant for the promisor to stand in the place of the third party. Here there is nothing to show that the agreement contemplated that the defendant would be primarily liable to the plaintiff. Instead the arrangement as related by the plaintiff was that, if Northwestern failed to pay, then Mr. Vaden would see that the plaintiff was paid.

Thus, according to the plaintiff's testimony, the agreement was that Mr. Vaden or the corporation was "guaranteeing" the payment, not assuming the obligation as an original undertaking. Further evidence establishing this construction of the oral agreement is that the defendant was not charged with the sum due, but Northwestern was, and Northwestern was sued by the plaintiff before this action was brought. See *Ross v. W. P. Stephens Lumber Co.,* 138 Ga. App. 748 (227 SE2d 486), involving similar facts, where it was held that the oral contract was collateral and not an independent undertaking.

Under the circumstances of this case, the agreement between the parties was required to be in writing under the Statute of Frauds. Code § 20-401 (2). Since the plaintiff was relying on a parol agreement, the trial judge did not err in granting the defendant's motion for directed verdict.

*Judgment affirmed. Shulman and Banke, JJ., concur.*

ARGUED MAY 10, 1977 — DECIDED JUNE 14, 1977 — REHEARING DENIED JULY 6, 1977 —

*Adams, Adams, Brennan & Gardner, Edward T. Brennan, A. Pratt Adams, Jr., Kathleen Horne,* for appellant.

*Anton F. Solms, Jr.,* for appellee.