72161. COMMUNITY FEDERAL SAVINGS & LOAN
ASSOCIATION et al. v. FOSTER DEVELOPERS, INC.
(348 SE2d 326)

</div>

BEASLEY, Judge.

Foster Developers brought a two-count complaint against Kelley, a real estate broker, and Community Federal and its loan officer, Ward. The first count sets out that: Foster Developers was involved in real estate development called Plemons Estate Subdivision; two lots (numbers 112 and 118) were conveyed to Kenemore, a builder, for

---

$4,500 each; at that time Foster Developers received no money but took a demand note and security deed for the purchase price; the security deed was subordinated to a subsequent security deed made in order to procure a construction loan on each lot; Foster Developers made such agreement pursuant to Kelley's oral representation that "he would see to it that plaintiff would be paid on the first draw of any subsequent construction loan"; Kenemore obtained construction financing from Community Federal; Ward was loan officer for Community Federal construction loans; Foster, the president of Foster Developers, contacted Ward and advised him Foster Developers had not been paid in accordance with the understanding with Kelley.

Ward and Community Federal were alleged to be negligent in: failing to properly disburse the construction loan proceeds to Foster Developers when they knew or should have known it was entitled to a portion of the proceeds; failing to make diligent inquiry after receiving notice of the claim by Foster Developers; permitting subsequent draws by Kenemore after receiving notice that Foster Developers had not been paid; taking no measures to satisfy the outstanding lien; failing to act with reasonable discretion and ordinary care and failing to adhere to established policies reporting disbursement of construction loan proceeds. It was also alleged that, because Ward and Community Federal acted with reckless disregard to circumstances evincing a want of care, aggravated damages were authorized. Thus, Foster Developers sought $9,000 compensatory damages and $50,000 aggravated damages.[1]

The second count of the complaint set forth that: Kelley, as exclusive real estate broker for the sale of Plemons Estate lots, assisted Kenemore in the requisition and disposition of the lots and as an agent of Kenemore received valuable consideration; on or about August 8, 1980 Kelley contracted Foster Developers to effectuate the purchase of lots 112 and 118 and represented to Foster that if the lots were conveyed without downpayment Kelley would see to it that Foster would be paid on the first draw of the construction loans; Foster agreed to subordinate its security deed from Kenemore based upon Kelley's representation; Kelley's promise was made without any present intention to perform and constituted fraud; as a result of Foster's reliance on Kelley's misrepresentation Foster sustained a loss of $9,000. The second count sought that sum plus $50,000 aggravating

---

[1] These damages are also commonly referred to as "punitive" or "exemplary." See, e.g., *Interstate Life & Acc. Co. v. Brewer*, 56 Ga. App. 599, 609 (5) (193 SE 458) (1937). However, they are imposable for aggravating circumstances, in order to deter the wrongdoer from repetition *or* as compensation for the wounded feelings of plaintiff. OCGA § 51-12-5. We shall refer to them as "aggravated damages." See *Menchio v. Rymer*, 179 Ga. App. 852 (1986) (dissent, Division 3).

damages because of Kelley's reckless disregard, entire want of care and conscious indifference to consequences.

Defendants answered and denied the material averments of the complaint. After discovery and the denial of a motion for summary judgment the case was tried by a jury resulting in a plaintiff's verdict for $9,000 plus $20,000 "punitive" damages as against Kelley, $20,000 against Community Federal and $5,000 against Ward. Defendants appeal. In essence, they assert there was no evidentiary or legal basis for an award of aggravated or even compensatory damages. It is also urged that apportionment of aggravated damages is not permitted and that the summary judgment denial was error.[2]

1. In our consideration of the issues we recognize the hoary proposition that after the jury verdict the evidence is construed in a light most favorable to the prevailing party and every presumption and inference is indulged favorably to sustaining the verdict. *Suber v. Fountain*, 151 Ga. App. 283, 285 (1) (259 SE2d 685) (1979).

With that concept firmly in mind we turn first to the matter of fraud, the theory on which Kelley's liability was predicated. In this regard, since the pleadings did not so indicate, here is a brief summary of how plaintiff incurred the loss of which complaint is made. In 1975 the development of Plemons Estate began. Foster was the developer and landowner, Kenemore the home builder, and Kelley the salesman of the lots. In this fashion unit one consisting of 21 lots proceeded with Foster turning over the lots to Kenemore for cash. When unit two began in 1977 matters became more hectic so that in 1978, as related by Foster, in order to free money for Kenemore's materials cost, Kelley suggested that Foster permit Kenemore to pay for the lots from the proceeds of the first draw rather than at the conveyancing. This was adopted by Foster apparently without incident over the next two years, with Foster receiving payment either from Kenemore or the lending institution handling the construction loan. No problem developed as to the vast majority of the 26 lots in unit two. In August and October 1980 Foster conveyed lots 112 and 118 respectively to Kenemore, taking two demand notes and security deeds which were subordinated to construction loans on the properties (second "mortgages" in common parlance). When Foster noticed that the houses on the two lots were past the "first draw" stage of construction he inquired regarding the lender and found the construction loans were from Community Federal, a new institution begun in 1979. In December 1980, he called the loan officer Ward and learned that the first draw proceeds had been paid to Kenemore. Then, according to Fos-

---

[2] Denial of summary judgment is not assignable error after trial. *George v. D'Angelo*, 171 Ga. App. 433 (1) (319 SE2d 874) (1984); *Talmadge v. Talmadge*, 241 Ga. 609 (1) (247 SE2d 61) (1978).

ter, he inquired if there was sufficient money left to pay his company. Upon being told there was, Foster said to Ward "will you see that I get paid for my lots and he said, okay."

Foster took no further action until August 1981 when he ascertained from Ward that the proceeds of the loan had all been drawn. Protesting as to why he did not receive payment for his lots he was told by Ward "that's your tough luck." During this time Kenemore's payments on the construction loan dragged to a halt resulting in Community Federal's declaring the loan in default, foreclosing on the property and eventually purchasing it at the foreclosure sale in July 1982.

"Normally, fraud cannot be predicated on statements which are in the nature of promises as to future events. [Cit.] The well recognized exceptions to this rule are promises made without present intent to perform, which is a misrepresentation of a present state of mind [Cit.], and promises made as an inducement to enter a contract. [Cit.] Both of these exceptions to the general rule require the promise (or concealment) be made in a manner as to deceive and mislead. '. . . knowledge of the falsehood constitutes an essential element. . . .' OCGA § 51-6-2 (b). 'To support an action for deceit, the misrepresentation must be either known at the time to be false, or recklessly made with the intention of deceiving the opposite party.'" *Goodlett v. Ray Label Corp.*, 171 Ga. App. 377, 378 (1) (319 SE2d 533) (1984). "A promise made *without a present intent to perform* is a misrepresentation of a material fact . . . sufficient to support a[n] . . . action for fraud." (Emphasis supplied.) *Middlebrooks v. Lonas*, 246 Ga. 720, 721 (2) (272 SE2d 687) (1980).

A critical element of proof is missing for there is no evidence that Kelley uttered the statement attributed to him lacking a present intent to perform. Contrary to the allegations of the complaint the statement was made in 1978 and not in 1980. It related, very ambiguously as to specifics, to the future. Kelley purportedly promised "I will see" that Foster was paid "on the first draw." Foster was paid either by a lending institution or by Kenemore over the next two years. According to Kenemore, the arrangements were worked out by Foster's attorney. Kenemore also testified that the two lots were not the only ones he financed through Community Federal, but they were the only ones for which Foster was not paid.

Assuming that Kelley's statement amounted to a misrepresentation on which Foster could rely (see however *Bonner v. Wachovia Mtg. Co.*, 142 Ga. App. 748 (236 SE2d 877) (1977); *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977); *Willis v. Rabun County Bank*, 161 Ga. App. 151, 153 (291 SE2d 52) (1982); *Reeves v. Habersham Bank*, 254 Ga. 615, 617 (1) (331 SE2d 589) (1985)), still the evidence establishes that at the time the statement was uttered there

was no intent to deceive. Thus, there are no grounds to recover from Kelley based upon fraud.

2. Next for our determination is the matter of aggravated damages under OCGA § 51-12-5. " 'If a tort is committed through mistake, ignorance, or mere negligence, the damages are limited to the actual injury received,' for vindictive or punitive damages are recoverable only when a defendant acts 'maliciously, wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others.' " *State Mut. Life Assn. v. Baldwin*, 116 Ga. 855, 860 (43 SE 262) (1902); *Molton v. Commercial Credit Corp.*, 127 Ga. App. 390, 394 (4) (193 SE2d 629) (1972). "Mere negligence, although gross, will not alone authorize the recovery of punitive damages." *BLI Constr. Co. v. Debari*, 135 Ga. App. 299, 302 (2) (217 SE2d 426) (1975).

There is nothing in the evidence to indicate a wanton disregard of Foster's rights by the defendants. The fact that, according to Foster's testimony, Ward was indifferent or unsympathetic to Foster's plight is not sufficient to show malice. Instead, there is uncontradicted testimony that Ward and Community Federal offered to let Foster pay off the first security deed at a bargain price (i.e., without closing costs) so that he could sell the property and recover the value of his secondary security deeds.

The evidence was insufficient to warrant the imposition of aggravated damages against any of the defendants. See *Kaplan v. Sanders*, 237 Ga. 132, 133 (2) (227 SE2d 38) (1976); *Alliance Transp. v. Mayer*, 165 Ga. App. 344 (301 SE2d 290) (1983). The trial court erred in submitting the issue of such damages to the jury and in not directing a verdict for the defendants.

3. Last we reach the issue of compensatory damages found against the defendants. It should be noted that Foster relies solely upon negligence, and not contract, as a theory of recovery. In addition, although mentioned now in appellee's brief, at no time in the lower court was the theory of promissory estoppel raised. Compare *Insilco Corp. v. First Nat. Bank*, 248 Ga. 322 (283 SE2d 262) (1981) and OCGA § 13-3-44.

In Georgia we have recognized the principle that liability can arise from the negligent performance of a voluntary undertaking. See, e.g., *Mixon v. Dobbs Houses*, 149 Ga. App. 481 (254 SE2d 864) (1979); *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 524 (3) (317 SE2d 853) (1984). This includes liability to third persons resulting from negligent inspections. *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248 (264 SE2d 191) (1980); *Johnson v. Handling*, 157 Ga. App. 313, 315 (1) (277 SE2d 307) (1981). Thus, having taken the aegis of a "Good Samaritan," one is responsible for negligently performing the duties assumed. This is not complex or difficult to apply. However, problems multiply when the duties one offers to assume are primarily

contractual in nature and involve such concepts as the parol evidence rule and the statute of frauds. Can one be negligent in failing to see to it that another gets paid, without putting anything in writing and without specifying the amount, time of performance and a host of other formalities normally necessary to constitute a binding obligation to perform a promise? Many cases, without mentioning the theory underlying the negligent performance of a voluntarily assumed duty, have said "no." See *Ely v. Stratoflex*, 132 Ga. App. 569 (208 SE2d 583) (1974), and *Kinard Realty v. Evans*, 152 Ga. App. 813 (264 SE2d 282) (1979) in addition to *Bonner v. Wachovia Mtg. Co.*, supra, *Beasley v. Ponder*, supra, *Willis v. Rabun County Bank*, supra, and *Reeves v. Habersham Bank*, supra.

A contract to answer for the debt of another must be in writing, OCGA § 13-5-30, *Alsobrook v. Taylor*, 181 Ga. 10 (181 SE 182) (1935), although this is not true as to an original undertaking whereby one becomes primarily liable on a debt. *Scott Hudgens Realty & Mtg. v. Executive Action*, 125 Ga. App. 81, 82 (186 SE2d 504) (1971). In that case use of such language as "I will see you paid" is enough to raise a jury question as to whether there was an original undertaking. See *Chastain-Roberts Co. v. Better Brands*, 141 Ga. App. 186 (233 SE2d 5) (1977) and cases cited therein. Therefore the terminology used by Kelley might be utilized to hold him liable contractually.[3] It definitely would not sustain a promise of Community Federal or Ward since there was clearly no consideration for their action. Instead, Ward's statement is construed to be no more than an assurance of cooperation in helping Foster protect his interest.

There are no grounds for liability based on negligence or for negligence arising out of a contract.

For yet another reason Foster cannot recover: he has failed to show that he suffered damage or that it resulted from the conduct of the defendants. The burden to prove this was his. *Grier v. Ward*, 23 Ga. 145 (1856); *Brown v. Five Points Parking*, 121 Ga. App. 819 (175 SE2d 901) (1970). Moreover, whether in tort or contract a plaintiff is bound to lessen or mitigate damages by the use of ordinary care and diligence. OCGA §§ 51-12-11 and 13-6-5.

What transpired here? Foster possessed two demand promissory notes from Kenemore. First of all he had to show he was unable to obtain the money due under the notes. Foster testified that he made certain equivocal requests of Kenemore and allowed himself to be put off by Kenemore's statements that "the bank" had his money. The proof offered failed to establish that Kenemore would not or could

---

[3] But this would not sustain liability for the negligent failure to ensure the payment two years later.

not pay him. Assuming that reliance could have been placed on Ward's statement in December 1980 that he would see that Foster got his money, after August 1981 Foster knew that Community Federal had no money for him. According to him, both Kelley and Kenemore told him the bank was supposed to pay his money. Yet from that time until the foreclosure no showing was made as to Foster's efforts or inability to obtain any sum from Kenemore despite the fact that Kenemore did not default on the loan with Community Federal until the spring of 1982. Foster simply sat on his rights in reliance upon an amorphous statement by Ward and did nothing for eight months. Then after being informed there was no money from the anticipated source he then did nothing for approximately nine more months until just before the foreclosure sale. In such circumstances, any loss incurred can be attributed to Foster and no other. See *Reeves v. Habersham Bank*, supra. Thus, it was error to deny defendants' motion for directed verdict as to the compensatory damages.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 8, 1986 —
REHEARING DENIED JULY 21, 1986 — 

*James A. Meany III, Ross L. Hatcher III*, for appellants.
*John O. Wiggins*, for appellee.