## A97A1946. GUSTAFSON et al. v. COTTON STATES MUTUAL INSURANCE COMPANY.
### (496 SE2d 346)

JOHNSON, Judge.

Insureds William and Sarah Gustafson appeal the grant of summary judgment to Cotton States Mutual Insurance Company. The superior court found the Gustafsons made false statements on their application for insurance which were material to Cotton States' acceptance of the risk and which, therefore, barred their recovery. However, we find material issues of fact remain for jury resolution and reverse.

"On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. [Cit.]" *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996). In order to prevail at summary judgment under OCGA § 9-11-56, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.]" *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to the Gustafsons as nonmovants, the record reveals the following pertinent facts: Sarah Gustafson began looking for a new homeowner's insurance policy in September 1992 when her previous insurer increased its rates. She contacted Cotton States' agent Martha Long, a woman who had been Mrs. Gustafson's long-time acquaintance, neighbor, and co-worker. On September 18, 1992, Mrs. Gustafson completed an application for insurance with Cotton States. There is no evidence that she was given an application to read and fill out. Rather, Long claims to have asked Mrs. Gustafson each of the questions listed on the application and to have accurately recorded her responses. These questions may have been asked over the telephone. Mrs. Gustafson, however, states that Long failed to ask her all of the questions on the application and did not accurately record her answers. Long recalls specifically asking Mrs. Gustafson "whether she or her husband had ever suffered any prior losses." Mrs. Gustafson recalled telling Long that jewelry had been stolen from her home four years earlier. Yet the application states: "[Q.]7. Has the applicant ever had a fire or theft loss? [A.]7. Y. Comments: 4 yrs. ago, someone broke into house & stole jewelry which was not cov." Long does not specifically state in her affidavit that she *asked* about *fire* losses, only that Mrs. Gustafson did not *disclose* any. Mrs. Gustafson said she did not mention fire losses because Long did not ask her about them. Moreover, Mrs. Gustafson said Long already knew about the fire losses when the application was taken because they had discussed them previously. In fact, Mrs. Gustafson specifically recalls that when her house was destroyed by fire

in 1983, Long discussed the fire with her and offered sympathy.

Also, when Long asked Mrs. Gustafson if she kept a dog on the premises, Mrs. Gustafson responded "yes" and admitted she had a Chow. Long agrees Mrs. Gustafson gave an affirmative answer to the question. Moreover, Long admits she saw a dog on the premises the same day the application was completed. Nevertheless, Long recorded Mrs. Gustafson's answer to that question as "N." Long explained that Mrs. Gustafson said the dog would be given away before the policy was issued.

After Long took the information, Mrs. Gustafson went to Long's office and signed the last page of the insurance application. Mrs. Gustafson contends this last page was all she was given and that she never saw the first three pages of the application which contained Long's questions and her answers. Also, in March 1993, in connection with the refinancing of her home, Mrs. Gustafson signed another application for insurance. However, she denies having seen the first three pages of the application, which are almost identical to those of the first application. She also denies being asked any additional questions by Long at that time.

On November 27, 1994, fire destroyed the Gustafsons' home. Upon investigating the fire, Cotton States discovered the Gustafsons had experienced five prior fire losses. About a year after the November 1994 fire, Cotton States informed the Gustafsons that because their application for insurance contained material misrepresentations regarding the prior fires and the dog on the premises, their policy was "rescinded and declared void ab initio." Cotton States returned the Gustafsons' premiums. Cotton States' underwriter manager gave an affidavit stating that Cotton States would not have issued the policy had it been aware of the prior fires or the Chow.

The evidence in this case is sufficient to authorize a finding that Mrs. Gustafson truthfully answered the questions she was asked, but that Long did not record the answers accurately. Mrs. Gustafson consistently denied being asked whether she suffered any prior fire losses when she applied for insurance with Cotton States. Although Cotton States contends Mrs. Gustafson's testimony is contradictory on this point, a careful reading of the record reveals only explainable inconsistencies in Mrs. Gustafson's testimony.[1] That Gustafson did

---

[1] Cotton States failed to elicit testimony from Mrs. Gustafson regarding which questions Long specifically asked when they completed the application for insurance. Mrs. Gustafson's testimony is often non-responsive, vague, and subject to interpretation. For example, Mrs. Gustafson did not, as Cotton States urges in its brief, give a recorded statement in which she "was presented with the application and confirmed that it contained the questions which had been asked of her by Martha Long." Rather, Mrs. Gustafson was asked the following: "Q. Alright. They print out a copy here, but this is a computer generated application, do you recall going through the application process on the computer? A. Martha and I sat down

not "disclose" fire losses is irrelevant under these circumstances because if she was not asked this question, the insurer cannot complain that she answered it falsely. Further, Mrs. Gustafson admitted at the time of the application that she had a Chow but added that she would find the dog a new home. Mrs. Gustafson said she found another home for the dog, although she eventually took it back. Thus, a jury could find that Mrs. Gustafson gave truthful answers to Long's questions when they were posed but that Long failed to record answers which reflected the situation accurately.

Whether an insured may escape the consequences of the agent's having inserted inaccurate or untruthful information into the application depends on whether the insured is excused from reading and verifying the accuracy of the application before signing it. *O'Kelly v. Southland Life Ins. Co.*, 167 Ga. App. 455, 456 (305 SE2d 873) (1983). "Where an application is signed in blank and authority given by applicant to the agent of the company to fill out the application from information given him, any false answers inserted in the application, which is attached to and made a part of the policy issued, *unless inserted by a misleading device or artifice perpetrated by such agent*, will be binding on the applicant." (Citations and punctuation omitted; emphasis in original.) Id.

We cannot say, given the dearth of evidence on this point, that Mrs. Gustafson was excused from reading the application before signing it. Even if Mrs. Gustafson was presented only with the signature page of the application, there is no evidence Long did anything which prevented Gustafson from reading the entire application. "This is not such 'misleading artifice or device' as amounts to fraud. [Cit.]" *Hall v. World Omni Leasing*, 209 Ga. App. 115, 118 (2) (433 SE2d 297) (1993). Though the Gustafsons may be charged with the inaccurate or untruthful answers recorded by Long, this does not end

---

and she went through and asked me a lot of questions. Q. Alright. The questions that she probably asked you are here, I'm showing you is page two of four where it asks about where you're employed, your date of birth, prior insurance carrier and things along those lines. Are these the questions you recall her asking? A. Um, huh." Cotton States never followed up on this line of questioning in the recorded statement to confirm that Mrs. Gustafson actually saw the first three pages of the application *document*. In fact, one may draw an inference from this statement that Mrs. Gustafson did not review the printed application document at the time she applied for the insurance because it existed only on a computer. This recorded statement reveals only that Mrs. Gustafson recalls being asked *questions* like the ones suggested to her. So, when Mrs. Gustafson later explains that she did not actually see the first three pages of the application until this litigation, she is not contradicting her prior testimony, but, rather, supplementing it. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986). Further, Cotton States did not in either the recorded statement or in the later examination under oath establish which questions Long specifically asked Mrs. Gustafson and what answers she specifically gave.

our inquiry because Cotton States may still be estopped from rescinding the contract if it had actual knowledge of the misrepresentations. *O'Kelly v. Southland Life Ins. Co.*, supra at 457.

Even if the application contained material misrepresentations sufficient to void the policy under OCGA § 33-24-7, "there is a general rule that if an insured makes a false statement on an application and the company's agent has actual knowledge that the statement is false, the agent's knowledge is imputed to the insurer, and the insurer is thereafter estopped from urging this defense." (Citation omitted.) *Jones v. United Ins. Co. &c.*, 177 Ga. App. 102, 103 (338 SE2d 532) (1985); *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 431 (1) (469 SE2d 199) (1996).

In this case, the evidence is sufficient to give rise to a finding that Long had actual knowledge of the Gustafsons' previous fire losses and ownership of a Chow when she prepared the application. We cannot disregard Gustafson's testimony that prior to making the application she discussed a previous fire with Long and that Long offered sympathy. In addition, Long's own affidavit testimony established that she knew the Chow was on the premises when the application was completed. Long's belief that the dog would be given away does not alter the fact that she knew the dog was there when she wrote "N" on the application. Because Long was Cotton States' agent, her knowledge may be imputed to Cotton States. "Notice to the agent of any matter connected with his agency shall be notice to the principal." OCGA § 10-6-58. Moreover, actual notice to the agent constitutes actual, not merely constructive, notice to the principal. *Millan v. Residence Inn &c.*, 226 Ga. App. 826, 827 (487 SE2d 431) (1997). Because there is evidence from which a jury may find that Cotton States had actual knowledge of the false statements, an issue of fact remains as to whether Cotton States is estopped from rescinding the policy on the basis urged.

*Judgment reversed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 23, 1998.

*Victoria D. Little*, for appellants.
*Swift, Currie, McGhee & Hiers, Craig A. Langley*, for appellee.