## A03A0562. OSOWSKI v. SMITH et al.
### (586 SE2d 71)

MILLER, Judge.

Tony Osowski filed a complaint for personal injuries allegedly sustained while he was on the property of Joseph and Teresa Smith to install cable. Osowski claimed he was injured by one of the dogs that Joseph Smith had assured him would be secured and confined while he completed his work on the premises. Osowski sought to hold the homeowners liable for their dog's actions under either OCGA § 51-3-1 or § 51-2-7. The trial court awarded summary judgment to the Smiths. We find that the record shows the existence of material disputed facts as to whether Joseph Smith voluntarily undertook a duty to restrain the dogs and whether that voluntary undertaking was negligently performed. Accordingly, we reverse.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence and construes that evidence in the light most favorable to the nonmoving party to determine whether material issues of fact exist. *Gustafson v. Cotton States Mut. Ins. Co.*, 230 Ga. App. 310 (496 SE2d 346) (1998).

So viewed, the evidence shows that the Smiths scheduled an appointment with Osowski to install cable television at their residence. Osowski arrived at the house, and after seeing "some dogs in the area that were roaming around . . . asked [Smith] if they would bite [him] or if they were aggressive . . . [and Smith] assured [him] that there shouldn't be any problems with them at all, except for one of them he couldn't be positive of." At the time of his inquiry, Osowski noticed only two dogs inside the fenced yard, and Osowski testified that "I was sitting in my truck. I did not get out until I was assured that I would not have any problems with [the dogs]." Osowski further testified that "[Smith] said he would retain [sic] those dogs if I wanted [him] to, if I'd feel better he would fence them up for me, and that some of them had — I might have a problem with and some I wouldn't. At that point, I waited." Osowski assumed the problem was resolved when Smith told him "that he would take care of it" and Smith left for a while, and when Osowski did not see any more dogs on the premises.

The incident at issue occurred as Osowski started to leave. Osowski, who is blind in his right eye, was walking toward his truck accompanied by Mr. Smith on his right side. As they walked down the

Smiths' driveway and were halfway to Osowski's truck, Osowski suddenly "saw a black dog out of the corner of my eye run across the yard towards my truck, and then I [was] struck from behind. . . ." After the dog struck him, Osowski's knees buckled and he fell to the ground. Osowski did not see which dog struck him. He surmised, however, that the culprit was the Smiths' Boxer because the Boxer was close by and ran off quickly. After resting for a while, Osowski finished the remainder of the cable installation and soon thereafter noticed that his leg was swelling.

The Smiths dispute virtually all of Osowski's testimony, although they agree that three dogs were on their property on the day that Osowski installed the cable. Joseph Smith recalled that he owned two of the dogs, one of which he put in his house. The third dog belonged to a neighbor.

When asked about the whereabouts of the dogs during the incident with Osowski, Smith testified that the Boxer and the Smiths' other dog were in the backyard with his wife. Smith admitted knowing that the dogs were in the yard somewhere behind Osowski and him. He denied seeing either dog approach but admitted seeing both dogs nearby, after Osowski said the Boxer collided with him. Neither Joseph nor Teresa Smith believed that their dog had hit Osowski.

The parties agreed to several stipulations including, among other things, that (1) Osowski was an invitee, (2) there was no leash law in effect, and (3) the Smiths did not have "superior knowledge of the dangerous propensity or temperament" of their Boxer before the incident. Finding no evidence that Osowski had asked that the Boxer be put inside the house or that the Smiths offered to do so while he worked, the court entered judgment for the Smiths.

1. Osowski contends that the trial court erred in concluding that the evidence failed to support an action for negligence against the Smiths as a matter of law. We agree.

> An owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge.

*Piney Grove Baptist Church v. Goss*, 255 Ga. App. 380, 384 (3) (565 SE2d 569) (2002). In addition, under certain circumstances, the law imposes liability on the owners or keepers of vicious or dangerous animals. OCGA § 51-2-7. In a typical dog bite case, regardless of

whether the cause of action is based on the premises liability statute (OCGA § 51-3-1) or the dangerous animal liability statute (OCGA § 51-2-7), a plaintiff must produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger. *Wade v. American Nat. Ins. Co.*, 246 Ga. App. 458, 461 (1) (540 SE2d 671) (2000). Here, Osowski conceded that he had been unable to offer any evidence that the Boxer had any dangerous propensities or that Joseph Smith knew about such propensities. In light of this admission, neither the statutory duty to keep one's premises safe nor the vicious or dangerous animal statute would subject the Smiths to liability. See id.

Nevertheless, that does not end our analysis, because a person may be held liable for the negligent performance of a voluntary undertaking. *Community Fed. Sav. &c. Assn. v. Foster Developers*, 179 Ga. App. 861, 865 (3) (348 SE2d 326) (1986). Under this principle,

> one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon.

(Citation omitted.) *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991). When one undertakes an act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care. Id. The person assuming such responsibility may be held liable for negligently performing the duties so assumed. See *Foster Developers*, supra, 179 Ga. App. at 865 (3).

Here, Osowski testified that prior to leaving his truck and before commencing work, he asked Smith whether the dogs were aggressive or would pose a problem to him. Osowski testified that he did not leave his truck until after he and Smith discussed the safety issue regarding restraining the dogs. Although Smith testified that he offered only to put up one of the dogs, Osowski testified that Smith said that he "would retain [sic] those dogs if I wanted [him] to, if I'd feel better he would fence them up for me. . . ." Osowski testified that he had asked about the dogs, not just about one dog.

Viewed most favorably to Osowski, the evidence reveals that all three dogs were not under restraint or confined during the time that Osowski was injured on the Smiths' premises. In light of the material

conflicts in the testimony, we find that a jury question exists as to whether Smith explicitly or implicitly agreed to undertake ensuring that the dogs would not pose a risk of harm to Osowski. Should the jury find that Smith agreed to restrain the dogs, then it must decide whether Smith breached the duty created by this voluntary undertaking and, if so, whether such breach caused Osowski's injuries. Conversely, if the jury finds that Smith was accurate in his testimony, Osowski would at least have had his day in court. It was error to grant summary judgment to the Smiths. See *McGinty v. Goldens' Foundry &c. Co.*, 208 Ga. App. 248, 249-250 (1) (430 SE2d 185) (1993).

2. In light of our holding in Division 1, we need not reach Osowski's remaining enumerations.

*Judgment reversed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JULY 15, 2003 —
RECONSIDERATION DENIED JULY 29, 2003 —

*Alton M. Adams*, for appellant.

*McClure, Ramsay, Dickerson & Escoe, John A. Dickerson, Larry L. Hicks II*, for appellees.