A95A0993. NEUBERT et al. v. VIGH et al.
(462 SE2d 808)

ANDREWS, Judge.

Appellant Neubert appeals from the state court's grant of summary judgment in favor of appellee Vigh on the issue of Vigh's liability for damages for injuries sustained by Brad Neubert, appellant's son, in a single car collision caused by Jason Vigh, appellee's minor son. Neubert's sole enumeration of error is that the lower court's grant of summary judgment was improper because Vigh admitted liability for Neubert's son's injuries by offering to pay medical bills related to the automobile accident.

Vigh's son, Jason, took Vigh's car without permission while he was out of town and while Jason was staying with another family. Jason had a single car accident in which three passengers were injured, including Neubert's son Brad. Several days later, Vigh visited the parents of the injured passengers and offered to help pay their

insurance deductibles. Neubert contends that Vigh admitted liability by making these offers and therefore summary judgment was not proper. Neubert relies on *Monson v. Brown*, 163 Ga. App. 42 (292 SE2d 486) (1982), which held that an offer to pay medical bills constitutes an admission of liability.

*Monson* has not been expressly overruled, but more recent cases demonstrate that it is not controlling. Recently, this Court held that "activity constituting a voluntary offer of assistance made on the impulse of benevolence or sympathy should not be considered as an admission of liability." *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (416 SE2d 127) (1992); *Rosequist v. Pratt*, 201 Ga. App. 45, 46 (410 SE2d 316) (1991). Further, in *Steverson v. Eason*, 194 Ga. App. 273 (390 SE2d 424) (1990), the court held that statements made by the defendant that he felt responsible for the death of plaintiff's husband and that he would do whatever he could for the plaintiff fell within the category of expressions of benevolence or sympathy and not into the category of admissions of liability for the injury.

Neubert relies on two affidavits to support her position that Vigh's offers to pay were not made on the impulse of benevolence or sympathy, but instead constituted admissions of liability. In one affidavit, Wanda Jackson states that Vigh's wife told Jackson that the Vighs would pay Jackson's son's medical bills. However, a statement by Vigh's wife cannot be construed as an admission by Vigh and thus is irrelevant. In the other affidavit, Robert Borgwat states that Vigh said he would be responsible for Borgwat's son's medical bills. Under *Steverson*, this statement does not constitute an admission of liability either, but rather is an expression of benevolence or sympathy. Further, Vigh stated in his deposition that he offered to pay Neubert's insurance deductible "out of sympathy for Karen Neubert in telling me what her problems were and not having the money to pay for some of the medical bills."

It should also be noted that this is not a case in which the person offering to help with the medical bills was the person directly involved in the accident. The dissent stresses the amount of time that had passed before Doug Vigh made the offer of help and thus distinguishes this case from *Rosequist* and *Steverson*. However, since Doug Vigh was out of town at the time of the accident, a contemporaneous offer of help was not possible. Further, the record clearly shows that Doug Vigh intended to have Jason pay the medical deductibles as well as all fines accruing from the accident.

Therefore, since Neubert has come forward with no evidence tending to show that Vigh felt that he was responsible for the accident because he had negligently supervised his child by allowing him access to a "dangerous instrumentality," the trial court properly granted summary judgment.

*Judgment affirmed. Birdsong, P. J., Pope, P. J., Johnson, Blackburn and Smith, JJ., concur. Beasley, C. J., and Ruffin, J., concur specially. McMurray, P. J., dissents.*

BEASLEY, Chief Judge, concurring specially.

The mother of the injured boy, representing herself and, as next friend, her son, contends that the father of the boy who was driving the father's car at the time of the collision failed to supervise his son, failed to secure the car keys, and accepted responsibility and agreed to pay medical bills. She does not invoke the family purpose doctrine.

On the defendant father's motion for summary judgment, the trial court compiled the undisputed material facts and concluded that, as a matter of law, the father was not negligent either in the supervision of his son or in securing the keys from him. The facts in this regard are that the son was unlicensed and was forbidden to drive the car, that he was not staying at home while his parents were out of town, and that although the keys were in the ignition, the car was in a locked garage, and the son had to turn off the house alarm and open the garage using a security code in order to get the car.

On appeal, the plaintiff does not challenge this recitation of the facts nor oppose the conclusion of law reached by the trial court based on them. Instead, she contends only that there are genuine issues of material fact requiring a jury to decide whether the father's actions and words following the accident constituted an admission of liability which would sustain a verdict in her favor. On this separate point, the trial court had concluded that the undisputed facts concerning the post-collision reaction of the defendant in the circumstances could not, as a matter of law, be found to constitute an admission of liability.

Thus appellant would have us hold that even where there is no legal liability, a defendant may be held legally liable if he agrees to pay. There is no authority for this position. An admission of liability has efficacy only if there is liability. If there is none, then the statements of the alleged tortfeasor constitute merely expressions of sympathy, benevolence, or an acceptance of *moral* responsibility. The latter, which does not equate with the narrower requirements of legal liability, seems to be the intention here, although a jury could find that the father's acts and words were intended for the purpose of sympathy or benevolence — or even an admission of liability. A jury would be needed to make a finding based on the credibility of the witnesses and the weight of the evidence. *White v. The Front Page*, 133 Ga. App. 749 (213 SE2d 32) (1975).[1] Cf. *Rosequist v. Pratt*, 201

---

[1] My quarrel with *Monson v. Brown*, 163 Ga. App. 42 (1) (292 SE2d 486) (1982), is that the court held that defendant's post-incident efforts and statements *constituted* an implied

Ga. App. 45 (1) (410 SE2d 316) (1991); *Steverson v. Eason*, 194 Ga. App. 273 (390 SE2d 424) (1990); *Utz v. Powell*, 160 Ga. App. 888, 890 (2) (288 SE2d 601) (1982). In these three cases, the circumstances were such that the court could conclude as a matter of law that the statements were not admissions of liability.[2] But the first three possibilities would have no legal consequences, and the fourth is foreclosed in this case because appellant has accepted the trial court's conclusion that there was no breach of duty on the part of the father.

I am authorized to state that Judge Ruffin joins in this special concurrence.

McMURRAY, Presiding Judge, dissenting.

To reach the correct result in the case sub judice, some fundamental understanding must be had of two rules of law. *Monson v. Brown*, 163 Ga. App. 42 (292 SE2d 486) has been chosen by the majority to represent the rule that an offer to pay the medical bills of another constitutes an admission of liability. An alternative rule, that activity constituting a voluntary offer of assistance made on the impulse of benevolence or sympathy should not be considered as an admission of liability, has been chosen as the prevailing rule by the majority and supported by several recent citations of authority, the most recent being *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (2) (416 SE2d 127). Are we really dealing with two separate rules of law here or has one supplanted the other over time? Certainly the latter is suggested by the language of the majority opinion.

However, in my view, this is where the majority has taken the wrong turn in analyzing the case sub judice. Not only are both of these rules of law correct and still viable, they have existed side by side for many years. In other words, they are not mutually exclusive. For example, the rule chosen by the majority can be traced back many years before the decision in *Monson*. See *Rape v. Barker*, 25 Ga. App. 362, 363 (103 SE 171); *Dougherty v. Woodward*, 21 Ga. App. 427, 430 (94 SE 636). And there are cases which acknowledge the need to choose which of these alternative rules governs a given set of factual circumstances. *Utz v. Powell*, 160 Ga. App. 888, 890 (2) (288 SE2d 601). There may even be said to be a third side to this dilemma posed by offers to compromise. OCGA § 24-3-37; *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (2), supra.

The proper issue in the case sub judice involves defining the

admission of liability. Whether it did or not should have been treated as a jury question, but the court left to the factfinder merely the ultimate issue of liability.

[2] The ruling in *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (2) (416 SE2d 127) (1992), is built on the unstated conclusion that the action of the investigator did not constitute an admission of liability as a matter of law in the circumstances of that case.

boundaries between these rules and determining which if any is controlling. The majority, by discarding one or more of these alternatives, has pre-determined its conclusion.

In my view, a jury issue is presented in the case sub judice as to whether Vigh's offers to pay medical expenses or some portion thereof were an admission against interest of liability for the incident or an expression of sorrow or sympathy. Vigh's testimony as to his intent may have been probative evidence in support of the conclusion reached by the majority, but unlike the majority I do not see it as being uncontroverted.

I would hold, consistent with this Court's decision in *Monson*, that Vigh's offers to pay medical expenses constitute an admission of liability and that evidence of this controverts Vigh's testimony as to his intent. The resulting genuine issue of material fact should be submitted to a trial jury.

The common thread which joins the cases relied upon by the majority, and others in which a post-incident statement is held as a matter of law to be an expression of benevolence or sympathy and not an admission of liability, is the existence of some circumstance contemporaneous with the statement which demands a finding of such a benign intent. In *Deese*, intent was shown by the injured party's own testimony concerning a plea to an investigator that because her disability entitlements had expired there would be no Christmas for the children. Both *Rosequist v. Pratt*, 201 Ga. App. 45 (410 SE2d 316), and *Steverson v. Eason*, 194 Ga. App. 273 (390 SE2d 424), relied upon by the majority, involved offers made in extreme proximity to the time of the underlying incident, that is on the day following the incident in each of these cases, while in the case sub judice the offers were not made until several days later. See also in this connection *Rape v. Barker*, 25 Ga. App. 362, 363, supra, in which the offer was made on the day following the incident. In the case sub judice, there is no evidence which compels the conclusion reached by the majority. Indeed, I find no prior case of this type in which solely a party's testimony after litigation has begun is held to compel a conclusion as to the nature of the intent underlying an offer to pay medical bills.

DECIDED OCTOBER 10, 1995.

*Silfen, Segal, Mills & Fryer, Keith E. Fryer*, for appellants.
*Alembik, Fine & Callner, G. Michael Banick, Janet L. Franchi*, for appellees.