## A06A2420. PETROSKY v. EMBRY CROSSING CONDOMINIUM ASSOCIATION, INC.

(643 SE2d 855)

MIKELL, Judge.

Warren Petrosky sustained injuries after he slipped and fell on "black ice" in the parking lot of the Embry Crossing Condominium complex (the "complex"). Petrosky sued the Embry Crossing Condominium Association, Inc. (the "Association"), which maintained the common areas of the complex, alleging that it had negligently failed to maintain the parking lot in a safe condition despite repeated warnings of icing. The trial court granted summary judgment to the Association, ruling that Petrosky could not recover because there was no evidence that the Association had actual knowledge of the icy conditions at the time of the fall. Petrosky appeals. Although we conclude that the Association had constructive knowledge of the hazard, we affirm, because the undisputed evidence shows that Petrosky had actual knowledge of the perilous conditions in the parking lot.

1. On appeal from an order granting summary judgment, we review the record de novo to determine whether the trial court properly found that no genuine issues of material fact existed and that the movant was entitled to judgment as a matter of law.[1] "Summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue" on at least one essential element of plaintiff's case.[2]

An invitee must prove two essential elements in order to recover for injuries sustained in a slip and fall: "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[3]

Properly construed, the evidence in the case at bar shows that Petrosky had resided in a condominium owned by his roommate, Neil Hopkins, at the complex for seven years prior to his fall on January 3, 2002. There had been an ice storm on the day before Petrosky's fall. Petrosky testified, however, that he did not call Atlanta Community Services ("ACS"), the company which had a contract to manage the

---

[1] *Porter v. Omni Hotels*, 260 Ga. App. 24 (579 SE2d 68) (2003).

[2] (Citation omitted.) *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 449 (1) (422 SE2d 305) (1992).

[3] (Citation and punctuation omitted.) *Cleveland v. Snowdrop Properties*, 232 Ga. App. 447 (501 SE2d 546) (1998).

complex, on either January 2 or January 3 to report the ice in the parking lot because the office was closed.

Petrosky deposed that there are two assigned parking places in front of the unit, but he and Hopkins do not use them during icy weather because they are shaded by trees and it takes several days for the ice to melt. On the date in question, they parked in two visitors' spaces where it was sunnier. Petrosky and Hopkins went to Kroger at approximately 6:30 p.m. and returned an hour later. It was dark when they left and when they returned. To reach his car, Petrosky walked about 200 feet along the sidewalk, stepped onto the driveway, and walked another 50 feet down the sloped asphalt to his car. Petrosky and Hopkins had placed rock salt along three-fourths of the sidewalk but had not salted the parking lot. Petrosky deposed that he encountered ice in the parking lot on the way to the car. Wearing boots, he negotiated the walk successfully and entered the passenger side. Petrosky also testified that as Hopkins drove away, the car tires slipped on the ice.

Upon their return, the men parked in the same spot. Petrosky testified that he clung to the side of the car because of the ice. It appeared to him that the ice at the back of the car had melted, so he let go when he reached the trunk. Evidently he was wrong, and he slipped on black ice. Petrosky's legs went out from under him, and he fell, fracturing his coccyx, dislocating his shoulder, and aggravating a previous back injury, which required surgery.

Petrosky deposed that he had seen ice in the parking area every time there was water and the temperature fell below freezing. He had complained about the icing problem to Robin Thurmond, one of the owners of ACS, at a meeting of the Association's board of directors several months before the incident. Petrosky recalled that a recommendation was made to hire the property's landscapers to salt the asphalt during the winter, but no agreement was ever reached because of a lack of participation by the homeowners. Hopkins also testified that he complained during Association meetings about the need to address the icing problem on the sidewalks and in the parking lot, but nothing was done.

Another resident of the complex, Rosemary Allen, testified that the parking lot is slick as a result of a defective gutter which constantly overflows from the roof onto the lot. Allen deposed that she complained about the problem for years. In fact, in icy conditions in 2002 she slid down her front stairs all the way out to the parking lot and broke her hand. She did not notify ACS of her injury.

Orie Wade, who was employed by ACS to manage the complex, testified that he paid the Association's bills, went to board meetings and took care of the buildings. Soon after the incident, Petrosky

reported his fall to Wade, who notified James E. Lescher of Community Association Underwriters of America, Inc. ("CAU"), the Association's insurance carrier. Based on his communication with Lescher, Wade notified Petrosky that CAU would pay his medical bills but not "any lost time." Wade deposed that following the incident, the Association's board of directors instructed him to turn the matter over to CAU, as he had already done. Wade further testified that ACS never paid to have the parking lot sanded or salted because the Association never directed ACS to do so. Finally, Wade deposed that the complex had no resident manager, and no maintenance personnel resided there.

The Association submitted an affidavit from Lescher, who averred that he is CAU's regional marketing director and is located in the Atlanta office; that decisions regarding claims are not handled in the Atlanta office; and that he has never authorized Wade to speak on behalf of CAU.

Kay Chadwick, president of the Association's board of directors, submitted an affidavit averring that the Association has never undertaken the duty to de-ice the parking lot and that it was "common knowledge" that "everyone provides their own de-icing upon a snow or ice storm."

Based on this evidence, the trial court ruled that Petrosky could not recover because he failed to provide evidence that the Association had actual knowledge of the icy conditions of the parking lot. Petrosky contends that this ruling is in error because the evidence shows that the Association had constructive knowledge of the hazard. While we agree that the evidence supports a finding of constructive knowledge, Petrosky still cannot recover, because the evidence is undisputed that Petrosky had actual knowledge of the hazardous condition. Thus, the Association was entitled to summary judgment under the "right for any reason" rule.[4]

(a) *The Association had constructive knowledge of the hazard.*

Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long

---

[4] See *Theesfeld v. Image Electrolysis & Skin Care*, 274 Ga. App. 38, 40 (2) (619 SE2d 303) (2005) (a summary judgment right for any reason will be affirmed).

the hazard had been present unless the owner has demonstrated its reasonable inspection procedures.[5]

We have specifically applied the requirement of reasonable inspection procedures to cases involving naturally-occurring conditions such as ice accumulation in a parking lot.[6] Indeed, in *Kauffman v. Eastern Food & Gas*,[7] we emphasized that

> [t]he accumulation of naturally occurring ice does not negate an owner's duty to exercise ordinary care in inspecting the premises in every circumstance. Ice forming due to inevitable natural forces unaffected by human agency does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action. Absent evidence that the owner reasonably inspected the parking lot for defects and that the ice formation was a new defect of which the owner had no notice or sufficient time to correct, we cannot say as a matter of law that it complied with its duty to business invitees to keep the premises safe.[8]

Here, the evidence is undisputed that the ice storm had resulted in an obvious and hazardous condition in the parking lot and that the Association lacked *any* inspection procedure to discover such condition. Moreover, the Association did not inspect the premises on the date in question. Thus, we conclude that the Association had constructive knowledge of the hazardous icy conditions encountered by Petrosky, regardless of whether he expressly notified the Association of the hazard.

(b) *Petrosky had actual knowledge of the hazard.*

"The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitee[ ] to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge of the hazard and

---

[5] (Citation and punctuation omitted.) *Crook v. RaceTrac Petroleum*, 257 Ga. App. 179, 180-181 (570 SE2d 584) (2002). See *The Augusta Country Club v. Blake*, 280 Ga. App. 650, 653 (1) (a) (634 SE2d 812) (2006).

[6] See *Kauffman v. Eastern Food & Gas*, 246 Ga. App. 103, 104-105 (2) (539 SE2d 599) (2000); *Dumas v. Tripps of North Carolina*, 229 Ga. App. 814, 816-817 (2) (495 SE2d 129) (1997). See also *Moore v. WVL Restaurant*, 255 Ga. App. 762, 763 (566 SE2d 465) (2002) ("The owner's argument that because the ice was naturally occurring, it had no duty to find and remove it is without merit") (citation omitted).

[7] Supra.

[8] (Punctuation and footnote omitted.) Id. at 105-106 (3). See also *Leibel v. Sandy Springs Historic Community Foundation*, 281 Ga. App. 390, 392 (636 SE2d 27) (2006).

the invitee did not."[9] In the case at bar, the undisputed evidence establishes that Petrosky's knowledge of the icy conditions in the parking lot at the time of the incident was at least equal to that of the Association. Petrosky testified that an ice storm had occurred the day before; that he expected to traverse ice in the parking lot; that he did in fact walk across ice to get to his car; and that when he returned from his car trip to the same spot in the parking lot, he clung to the side of his car because of the ice. Petrosky's equal knowledge of the perilous icy conditions bars his recovery.[10] Where, as here, "the evidence presented plainly, palpably, and indisputably leads to the conclusion that [plaintiff] had actual or constructive knowledge of the presence of icy conditions before [he] left [his] car to traverse the defendant's parking lot,"[11] the trial court's grant of summary judgment to the defendant will be upheld.

2. Petrosky further asserts that the trial court erred in granting the Association's motion for summary judgment because Wade was the Association's agent, and his statement to Petrosky that CAU would pay his medical bills constituted an implied admission of liability by which the Association is bound.[12] We disagree.

"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or

---

[9] (Citation and punctuation omitted.) *Ward v. Autry Petroleum Co.*, 281 Ga. App. 877 (637 SE2d 483) (2006). See also *Shansab*, supra at 450-451 (3) (plaintiff's equal knowledge of icy condition of office building parking deck precluded recovery for injuries in fall thereon).

[10] See *Gilliam v. Fletcher Bright Co.*, 244 Ga. App. 315, 316 (1) (535 SE2d 325) (2000) (invitee who slipped and fell on icy patch in convenience store parking lot after snow storm had equal knowledge of hazard); *Elder v. Care-More*, 224 Ga. App. 712, 713 (481 SE2d 870) (1997) (plaintiff knew about wintry conditions and had observed snow on defendant's pavement); *Columbus Doctors Hosp. v. Thompson*, 224 Ga. App. 682, 683-684 (482 SE2d 705) (1997) (plaintiff's equal knowledge of invisible ice hazard following snow storm warranted summary judgment); *Fisher v. HBS Mgmt.*, 220 Ga. App. 752-753 (469 SE2d 885) (1996) (plaintiff's equal knowledge of the weather conditions and the condition of the parking lot barred recovery) (whole court); *Westbrook v. M & M Supermarkets*, 203 Ga. App. 345-346 (1) (416 SE2d 857) (1992) (same). Compare *Wallace v. Nissan of Union City*, 240 Ga. App. 658, 660 (1) (524 SE2d 542) (1999) (no evidence that plaintiff knew about the ice on which he slipped); *Martin v. Dunwoody-Shallowford Partners*, 217 Ga. App. 559, 561 (2) (c) (458 SE2d 388) (1995) (by operating a sprinkler system on the premises in freezing weather, proprietor had at least constructive knowledge of "black ice" on which plaintiff slipped).

[11] (Citations and punctuation omitted.) *Gilliam*, supra at 316 (1). Petrosky has not argued the applicability of the "necessity exception" established by *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 159-160 (335 SE2d 408) (1985) (tenant in an apartment building who was required to traverse the icy sidewalk on which she slipped and fell in order to enter and exit her apartment did not, as a matter of law, assume the risk of her injuries). Compare *Shansab*, supra at 451 (4) ("necessity rule" applies in landlord/tenant cases only, not to employees of a tenant whose office is located in the proprietor's building); *Hart v. Brasstown View Estates*, 234 Ga. App. 389, 391 (506 SE2d 896) (1998) ("necessity rule" does not apply to innkeeper-guest relationship).

[12] See OCGA § 24-3-33: "Admissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal."

subsequently ratifies the acts of another in his behalf."[13] There is some evidence that Wade was an agent of the Association, given his testimony that the board of directors instructed him to turn the matter over to CAU. Petrosky concedes, however, that Wade was not CAU's agent. Moreover, Lescher's affidavit demonstrates that Wade was not authorized to act on CAU's behalf. Petrosky argues that the only relevant agency relationship is that between Wade and the Association because the Association ratified CAU's decision to pay Petrosky's medical bills. He points to Wade's deposition, in which he testified that he reported Lescher's statement to the board of directors, and the board said "okay."

Petrosky's argument misses the mark. First, the case upon which he relies, *Monson v. Brown*,[14] which held that a defendant's offer to pay a plaintiff's medical expenses constitutes an implied admission of liability,[15] was called into serious question in *Neubert v. Vigh*.[16] In *Neubert*, we held that voluntary offers of assistance "fell within the category of expressions of benevolence or sympathy and not into the category of admissions of liability for the injury."[17] Finally, citing *Neubert*,[18] we noted in *Widner v. Brookins, Inc.*[19] that "[a]n admission of liability has efficacy only if there is liability. If there is none, then the statements of the alleged tortfeasor constitute merely expressions of sympathy, benevolence, or an acceptance of *moral* responsibility."[20] Even giving Petrosky the benefit of all inferences, Wade's statement as the agent of the alleged tortfeasor can be considered, at best, an acceptance of moral responsibility, because, as we held in Division 1, the Association has no liability.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 20, 2007.

*William H. Arroyo*, for appellant.
*Barrickman, Allred & Young, Fredric S. Young*, for appellee.

---

[13] OCGA § 10-6-1.
[14] 163 Ga. App. 42 (292 SE2d 486) (1982).
[15] Id. at 43 (1).
[16] 218 Ga. App. 693 (462 SE2d 808) (1995) (whole court).
[17] (Citation omitted.) Id. at 694.
[18] Id. at 695 (Beasley, C. J., concurring specially).
[19] 236 Ga. App. 563 (512 SE2d 405) (1999).
[20] (Citation and punctuation omitted; emphasis in original.) Id. at 565-566 (3).