## A05A0215. THOMPSON v. CITY OF ATLANTA.
(616 SE2d 219)

SMITH, Presiding Judge.

This appeal arises out of the trial court's order granting summary judgment to the City of Atlanta (the city) in a negligence and nuisance action brought by plaintiff Janetta Thompson. Because Thompson failed to point to a triable issue of fact on either claim, we affirm the judgment of the trial court.

Thompson brought this action for personal injuries, wrongful death, and negligent infliction of emotional distress against the city and United Water Services Unlimited Atlanta, LLC (United). She alleged in her complaint that on the evening of November 25, 1999, the vehicle she was driving hydroplaned on a "large body of water covering the" roadway in "the area of the intersection of Perry Boulevard and Habershal Drive" (the intersection) and struck several trees. Thompson's infant son died as a result of head injuries he received. Thompson alleged that the defendants negligently constructed or maintained the intersection and knew or should have known about the dangerous condition of that intersection. Thompson dismissed United without prejudice. In an amended complaint Thompson later added a nuisance claim, alleging that the city "is responsible for the maintenance of and design for the drainage system in the area of Habershal Drive and Perry Boulevard, including the design of storm sewers and their relationship with the roadway." She alleged further that "[d]uring rain events the intersection . . . ponds with water because [the city's] maintenance and design of the drainage system in the area is inadequate."

The trial court granted summary judgment to the city on Thompson's negligence claims on the ground that the city was protected by governmental immunity. The court further concluded that Thompson failed to show that the city had notice of any condition creating a nuisance and granted summary judgment to the city on that claim as well. Thompson appeals.

1. Relying on OCGA § 32-4-93 (a), Thompson contends that the trial court erred in concluding that the city was immune from liability on her negligence claims. That Code section provides:

A municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

Id.

In concluding that the city was entitled to sovereign immunity, the court based its ruling on language found in *City of Rome v. Turk*, 235 Ga. 223 (219 SE2d 97) (1975). In that case, the Georgia Supreme Court stated that "[t]he power to construct and maintain a sewer and drainage system is a governmental function." (Citation omitted.) Id. at 224 (1). This court has similarly stated that "[t]he construction, installation and maintenance of a sewer-drainage system (including that for surface water) is a governmental function of the city." (Citations omitted.) *Foster v. Crowder*, 117 Ga. App. 568 (1) (161 SE2d 364) (1968).

Thompson argues that the trial court effectively "made the determination that this case is about a negligently constructed and maintained sewer and drainage system within Appellee's city limits and not a case about a defective roadway." She contends that her claim is not based simply on the defectiveness of the sewer and drainage system, but instead "that the basis of her claims is the negligently constructed and/or maintained *roadway*, which roadway was impacted negatively due to water on its surface which could not properly drain."

We need not decide the related issues of whether Thompson's claims alleged a defective roadway, as opposed to a defective drainage system, and whether the city was entitled to sovereign immunity on Thompson's negligence claims. Even assuming without deciding that the city was not entitled to sovereign immunity, Thompson has not shown that the city had notice of any defect, as required by OCGA § 32-4-93 (a). Under that Code section, a city is not liable for negligence if it did not negligently construct or maintain the roadway, *or*

if it had no actual notice of a roadway defect, *or* if the defect had not existed for a length of time sufficient to place the city on constructive notice of the defect. Id.

In support of its motion for summary judgment, the city submitted the affidavit of the employee who supervised the city's storm water management team. He testified that he conducted a diligent search of records "for the time period prior to November 25, 1999," and that no "complaints or work orders" were found "concerning the condition of the road at or near the intersection of Perry Boulevard and Habershal Drive." In another affidavit, the Public Works Manager for Sewer Services testified that he had searched his office's records and found that his office had received one complaint prior to November 25, 1999 concerning the intersection. That complaint occurred on January 5, 1997 and concerned a "catch basin" that was "stopped up or slow." He defined "catch basin" as a drain "used on the side of roads or paved areas to drain storm water." This witness testified that the sewer services division has a policy, which was being implemented in 1997, of "send[ing] a crew in a reasonably timely fashion to check and correct every complaint received by the division, including but not limited to, clearing stopped up or slow catch basins."

In Thompson's response to the city's motion, she pointed to the affidavit of Victor Jones, a water resources engineer. In his affidavit, Jones described the roadway "in the area of the intersection" as having "two curb inlets to allow rainwater to drain off the roadway." He stated that the inlet on the side of the road where ponding occurred "is not adequate pursuant to the standard requirement in this area to allow for a 10-year storm event to have gutter spread (the distance from the curb to the furthest point of ponding associated with the inlet) of eight feet or less." Jones noted that the inlet opening is 1.6 feet but that for it "to meet standard requirements the curb inlet opening would need to be six feet." In Jones's opinion,

> the drainage aspect of the roadway design for this portion of Perry Boulevard (specifically, the north inlet on Perry Boulevard west of the intersection with Habershal Drive in northwest Atlanta) is inadequately designed. . . . [T]he current design causes a gutter spread greater than the standard criteria and ponding is likely to occur on the roadway at this inlet in even the most frequent storm events.

In addition, Thompson submitted the affidavit testimony of Stevie Anderson. Anderson testified that he was "personally familiar with the intersection" and that before "November 25, 1999, on occasions of heavy rainfall, the intersection . . . would be covered by standing

water. I believe that this created a dangerous driving condition for the motorists travelling on Perry Boulevard."

We do not agree that this evidence established that the city had notice of any defect at the intersection. The city submitted evidence that it had not received notice of street defects in the area of the intersection, and the only complaint the city received concerning drainage problems near the intersection occurred in early January 1997, nearly three years before the incident here. At the time of the earlier complaint, the city had a policy of checking and correcting every such complaint. Furthermore, as pointed out by the city,

> there is no evidence that the 1997 blockage was at the particular sewer inlet which is complained of by appellant. Appellant's expert states that he believes that the problem is with the north inlet on Perry Boulevard at its intersection with Habershal Drive, yet appellant's expert also states there is more than one sewer inlet at that intersection.

In addition, the city correctly points out that "there is absolutely no evidence that the City was notified of other vehicle accidents occurring" at the intersection where this incident occurred "due to standing water."

As for the affidavit testimony of Anderson concerning his personal belief about the intersection, neither that affidavit nor the affidavit of Thompson's expert shows the length of time any water problem existed at the intersection. As pointed out by the city, "there is no objective evidence that the defects complained of by appellant [have] existed over any significant period of time." Thompson "presented no evidence showing any actual knowledge of how long [the alleged defect] had been in existence. An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Brumbelow v. City of Rome*, 215 Ga. App. 321, 322 (450 SE2d 345) (1994). The city was entitled to summary judgment on Thompson's negligence claims.

2. We next reach Thompson's contention that the trial court erroneously granted summary judgment to the city on her nuisance claim. Knowledge or notice of the alleged defective condition is an element of this claim as well. See *Earnheart v. Scott*, 213 Ga. App. 188, 189 (1) (444 SE2d 128) (1994). Generally, the issue of whether a nuisance exists is a question of fact, but "in some cases it can be held as a matter of law that no nuisance exists. [Cit.]" Id. As discussed above, Thompson failed to show that the city had notice of any defective condition with respect to the intersection. The city was therefore entitled to summary judgment on this claim as well.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 23, 2005.

*Weinstock & Scavo, Michael Weinstock, Jan P. Cohen, Matthew W. Carlton*, for appellant.
*R. Roger Bhandari*, for appellee.