A09A0507. HUFF v. DYER et al.
(678 SE2d 206)

JOHNSON, Presiding Judge.

On January 13, 2007, Jamie Huff was injured when a dog owned by Theresa and Michael Dyer bit her. Huff sued the Dyers, claiming that they failed to warn her of their dog's dangerous propensities and that they committed negligence per se by violating OCGA § 51-2-7 and the Hall County Animal Control Ordinance. Following a jury trial, the jury found in favor of the Dyers. Huff appeals, claiming that the trial court erred in (i) granting the Dyers' motion for a directed verdict as to their dog's dangerous propensities and (ii) denying her motion for a directed verdict as to the Dyers' negligence per se. Finding no error, we affirm.

A directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, . . . demand[s] a particular verdict."[1] Where the trial court has denied a motion for directed verdict and allowed a claim to be considered by the jury, we construe the evidence in the light most favorable to the prevailing party to determine if there is any evidence to support the jury's verdict.[2] As to a claim where the trial court has granted a motion for directed verdict, however, we review the record de novo, construing the

---

[1] OCGA § 9-11-50 (a).

[2] *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 57 (2) (670 SE2d 874) (2008).

evidence in favor of the nonmovant.[3]

So viewed, the evidence as to Huff's negligence per se claim showed that the Dyers were eating breakfast at a restaurant in Hall County while their Labrador retriever was chained to the bed of their pickup truck, which was parked outside. The chains prevented the dog from placing his paws on top of either the bed rail or tailgate of the truck, but the edge of his snout could extend approximately three inches beyond the edge of the bed rail.

Huff was also preparing to eat breakfast at the same restaurant, and after speaking with her grandfather in the parking lot, Huff saw the Dyers' dog. Both the Dyers and Huff regularly ate at the restaurant, and Huff had seen the dog several times before. Although conflicting evidence was presented as to whether Huff had previously petted the dog, she admitted that, on this occasion, she took a few steps toward the dog, and spoke to it. Huff thought that the dog was going to lick her in the face, but instead it bit her, injuring her nose and forehead.

The Dyers asserted that Huff was walking with her grandfather's small dog, and that the small dog barked or snapped at their dog prior to the attack on Huff. Huff claimed, however, that she left her grandfather's dog in his car and approached the Dyers' dog alone. The Dyers also presented evidence that Huff attempted to pet their dog, and while Huff denied that she did so, she only stated that she was not "aware of" leaning down to allow the dog to lick her.

In support of Huff's claim that the Dyers had knowledge of their dog's dangerous propensities, a waitress testified that on a prior occasion when the Dyers were eating at the restaurant, their dog was barking while a child stood near their truck. The waitress also testified that she "could have" told Huff that Mrs. Dyer appeared frustrated that the child was getting so close to their dog and said "[a]s long as those kids stay away from my truck, they don't have to worry about getting bit."

1. Huff claims that the trial court erred in granting summary judgment to the Dyers on her claim that they failed to warn her of their dog's dangerous propensities. OCGA § 51-2-7 provides that

> [a] person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the

---

[3] Id. at 56 (1).

YALE LAW LIBRARY

animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

Huff asserts that she has satisfied the second sentence of OCGA § 51-2-7 by producing evidence that the Dyers' dog was in violation of a Hall County Animal Control Ordinance. We disagree. OCGA § 51-2-7 relieves a plaintiff from producing evidence of a dog's vicious propensity based on evidence of a violation of an ordinance that restricts dogs from running at large.[4] Here, however, there is no evidence that the Dyers' dog was "running at large." The Hall County Animal Control Ordinance permits dogs to be controlled by chains, and it is undisputed that the Dyers' dog was chained to the bed of their truck at the time of the attack.[5] As a result, there is no evidence that the Dyers were in violation of any ordinance restricting dogs from running at large.

Huff has also failed to produce any evidence that the Dyers had knowledge of their dog's vicious propensity. Despite evidence that the dog had previously barked when a child was near the truck, barking amounts at most to menacing behavior and does not serve as evidence of a dog's vicious propensity.[6] Similarly, the waitress' statement that Mrs. Dyer "could have" said the children would not "have to worry about getting bit" if they would stay away from her truck also fails to support a claim that the Dyers knew of their dog's vicious propensity. Huff failed to introduce any evidence that the dog had previously attacked or bitten anyone, and the waitress' testimony is insufficient to create a genuine issue of fact as to the Dyers' knowledge of their dog's vicious propensity.[7]

2. Huff also claims that the trial court erred in denying her motion for a directed verdict as to her allegation that the Dyers

---

[4] *Johnston v. Warendh*, 252 Ga. App. 674, 676 (1) (556 SE2d 867) (2001).

[5] Compare *Oertel v. Chi Psi Fraternity*, 239 Ga. App. 147, 150 (2) (521 SE2d 71) (1999) ("If an animal is running at large in violation of a local ordinance when it bites someone, the owner's knowledge of its propensity to bite is immaterial.").

[6] *Durham v. Mooney*, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998).

[7] See generally *Thompson v. City of Atlanta*, 274 Ga. App. 1, 4 (1) (616 SE2d 219) (2005) (knowledge may not be inferred based on evidence that is uncertain, speculative, or merely raises a conjecture or possibility); compare *Raith v. Blanchard*, 271 Ga. App. 723, 725 (1) (611 SE2d 75) (2005) (genuine issue of material fact existed as to dog owner's knowledge of vicious propensity where owner's statement that dog "could bite somebody" was made after dog previously "nicked" someone's hand with its teeth after trying to bite them in the face); *Supan v. Griffin*, 238 Ga. App. 404, 406 (519 SE2d 22) (1999) (genuine issue of material fact existed as to dog owner's knowledge of vicious propensity where owner's statement that neighbor should "do whatever was necessary . . . to keep . . . dogs from attacking" came after dogs had been involved in an attack).

committed negligence per se by violating OCGA § 51-2-7 and the Hall County Animal Control Ordinance. Under Georgia law, the violation of a statute, ordinance, or mandatory regulation that imposes a legal duty may constitute negligence per se.[8] As discussed in Division 1, supra, Huff presented no evidence to create a jury issue as to her claim that the Dyers were liable as owners of a vicious animal pursuant to OCGA § 51-2-7.

The Hall County Animal Control Ordinance at issue provides that "[i]t is unlawful for the owner of any domesticated animal . . . to permit such domesticated animal to be at large and not under restraint." The ordinance provides that an animal is considered "under restraint" if:

1. It is controlled within the property limits of its owner by a visible physical barrier (fence (non electronic), chain, leash, etc.) of its owner;

2. It is controlled by a leash;

3. It is at heel or beside a competent person and is obedient to the person's commands; or

4. It is within the occupant enclosure of a vehicle or restrained if [sic] within the cargo area of a truck being driven or parked on the streets.

In construing statutes, including local ordinances, courts should follow the plain meaning of the statutory language.[9] Here, the ordinance considers an unsupervised dog to be sufficiently restrained when it is prevented from running at large by a leash or the occupant enclosure of a vehicle, by a physical barrier when it is on the owner's real property, and by any type of restraint when the dog is within the cargo area of a truck. The ordinance does not protect people who approach restrained animals, regardless of whether the animal is at heel, on a leash, or restrained in the bed of a truck. Huff admitted that she approached the Dyers' dog, and it was undisputed that the chains prevented the dog from escaping from the truck's cargo area. As a result, we find that the Dyers' dog was "under restraint" pursuant to the Hall County Animal Control Ordinance as a matter of law.[10] The evidence was therefore more than sufficient to support the jury's conclusion that the Dyers' dog was "under

---

[8] *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 350 (3) (568 SE2d 559) (2002).

[9] See *Columbus Ga. Consolidated Govt. v. Schmidt*, 269 Ga. 723-724 (507 SE2d 435) (1998).

[10] Compare *Johnston*, supra at 677 (1) (whether dog was sufficiently "confined" to comply with ordinance was a jury question where dog was running without restraint).

restraint" as required by the ordinance, and the trial court did not err in denying Huff's motion for a directed verdict.

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED MAY 12, 2009.

*Anderson, Tate & Carr, Render C. Freeman*, for appellant.
*McClure, Ramsay, Dickerson & Escoe, John A. Dickerson, Larry L. Hicks II*, for appellees.