**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 13, 2012**

# In the Court of Appeals of Georgia

A12A0571. ABUNDANT ANIMAL CARE, LLC A/K/A ANIMAL      BO-027
        KINGDOM VETERINARY HOSPITAL et al. v. GRAY.

BOGGS, Judge.

In this personal injury case arising out of a dog bite, we granted the application

for interlocutory appeal of Abundant Animal Care, LLC and Dr. Walton Waller,

DVM, (collectively "the clinic") to review the trial court's order denying their motion

for summary judgment. In several related enumerations of error, the clinic contends

the trial court should have granted its motion for summary judgment. For the reasons

explained below, we agree and reverse.

Summary judgment is appropriate when there is no genuine issue as to any

material fact and the moving party is entitled to a judgment as a matter of law. OCGA

§ 9-11-56 (c). On appeal from the grant or denial of summary judgment, we apply a

de novo standard of review, and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

So viewed, the record shows that Gray was injured when she was bitten by a dog at the clinic while spending a day there with her aunt, Bennie Buchanan, who worked at the clinic. Buchanan testified that at the time of Gray's injury, Gray was shadowing her in order for Gray and the clinic to make an informed decision about whether Gray should become an employee of the clinic. Gray, on the other hand, testified that she was already an employee at the time of her injury.[1] Her injury occurred on her first day at the clinic.

Gray testified in her deposition that after she arrived with Buchanan around 7:00 a.m., Buchanan instructed her about how to clean the animal cages and take animals outside into a fenced yard "for pottying." Gray also fed animals, placed medication in their food, swept and mopped floors, and helped make a footprint of a deceased animal. Gray testified that at Buchanan's instruction, she took a dog named "Drago" into the outside fenced yard to eat and exercise. She left Drago

_____

[1] Based on the record before us, it appears that the Workers' Compensation Board determined that Gray was not an employee at the time of her injury.

2

outside while she ate lunch with Buchanan. Gray testified that she was scared when she went to take the dogs outside one at a time "because of the way that the dogs jumped . . at the cage" when they heard her and Buchanan enter the room. Drago was the second dog she took outside. Gray testified that Drago growled at her while in his cage and "he seemed agitated," but Buchanan assured her "that it was okay."

Gray testified that when she went outside after lunch to smoke a cigarette with Buchanan, Drago was lying down and Buchanan held the door open for her. Gray testified that as soon as she walked outside, Drago

> grabbed [her] the first time . . . on her shoulder and [Buchanan] knocked him off. And he jumped back up, and that's when he grabbed me the second time, and it's like he locked his jaw. I couldn't get him off. And she kept beating him with the pan, the bowl that was out there, and then no more then she got him down, he jumped back up and got me a third time.

In this continuous incident, the dog bit Gray three separate times. In an affidavit provided after her deposition, Gray averred that Buchanan told her several days after

3

the incident that she would not have told her it was okay to go outside if she had known that Drago was outside.[2]

The record contains no evidence that Drago had bitten anyone before biting Gray. At the time of Gray's injury, Drago had been boarded with the clinic for "at least four months." Dr. Waller, the veterinarian and owner of the clinic, testified that he had known Drago "from when he was a puppy" and "probably better than most other animals that we have at the clinic." He never saw Drago growl, bark aggressively, bare his teeth, or snap at anyone.

Buchanan testified that Drago had jumped on her in the past while playing. In her opinion, Drago might have mistaken Gray's hair for a tug-of-war toy when he jumped on her. She testified, "He thought he was playing. That . . . her hair was something to play with, because it was hanging down and it was kind of moving around. He runs in, he grabs at it. Because he would play with those ropes. Playing,

---

[2] Buchanan testified that she told Gray that she was not allowed in the back area where Drago was boarded unless Buchanan was with her. She explained that she had taken two different dogs of the same breed outside before Gray took Drago out without her knowledge. According to Buchanan, Gray should not have taken Drago outside without her, but not because of any particular danger posed by Drago. According to Buchanan, she was surprised to see Drago run toward them when they went outside to smoke a cigarette after lunch because she did not know that he had been taken outside.

you know, pulling, tugging at it. And that's when he's pulling, yanking back and him, he's pulling her more."

Following her injury, Gray filed suit against the clinic, asserting it was liable based upon the following theories of recovery: violation of Cherokee County ordinances; negligence per se; negligence; premises liability; violation of the vicious dog statute, OCGA § 51-2-7; and nuisance. The clinic moved for summary judgment in its favor, which the trial court denied based upon its general conclusion that material issues of fact precluded summary judgment in the clinic's favor. This court subsequently granted the clinic's application for interlocutory review. In related enumerations of error, the clinic asserts the trial court erred by failing to grant its summary judgment motion.

1. "In a typical dog bite case, regardless of whether the cause of action is based on the premises liability statute (OCGA § 51-3-1) or the dangerous animal liability statute (OCGA § 51-2-7), a plaintiff must produce evidence of the vicious propensity of the dog in order to show that the owner of the premises had superior knowledge of the danger." (Citation and punctuation omitted.) *Custer v. Coward*, 293 Ga. App. 316, 319 (2) (667 SE2d 135) (2008). In this case, Gray failed to produce any evidence of Drago's vicious or dangerous propensity; it is undisputed that Drago had never

5

bitten or harmed anyone before the incident with Gray. See *Huff v. Dyer*, 297 Ga. App. 761, 763 (1) (678 SE2d 206) (2009).

In light of this undisputed evidence, Buchanan's alleged statement that she would not have told Gray to go into the outside exercise area had she known that Drago was there does not support a finding of superior knowledge of a vicious or dangerous propensity posed by Drago. See id. (owner's statement that children "would not 'have to worry about getting bit' if they would stay away from her truck" inside which her dog was chained did not create issue of fact as to dog's vicious propensity). Nor does Dr. Waller's alleged promise to take care of Gray's medical bills create an inference of knowledge that Drago was vicious or dangerous. See *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 253 (699 SE2d 439) (2010) (offer to pay plaintiff's medical bills after injury not an admission of liability). And, Buchanan's knowledge that Drago could jump on people does not support an inference of superior knowledge that Drago would bite a person. See, e. g., *Huff*, supra.

We also find that Gray cannot establish vicious propensity through a violation of Cherokee County animal ordinances. OCGA § 51-2-7 provides: "In proving vicious propensity, it shall be sufficient to show that the animal was required to be

6

at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash." This Code provision "relieves a plaintiff from producing evidence of a dog's vicious propensity based on evidence of a violation of an ordinance that restricts dogs from running at large." (Citation and footnote omitted.) Id. at 762-763 (1). In this case, it is undisputed that Drago was not running at large in violation of Cherokee County Ordinance Sec. 10-29 (a)[3] at the time of Gray's injury.

For these reasons, the trial court should have granted summary judgment in the clinic's favor with regard to Gray's claims premised upon premises liability, the dangerous animal statute, nuisance, and negligence per se. Gray's remaining theory of recovery – negligence – requires additional analysis.

2. Gray asserts that the clinic should be held liable based upon negligent performance of a volunteer undertaking. In *Osowski v. Smith*, 262 Ga. App. 538 (586

---

[3] This ordinance provides: "It shall be unlawful for any owner, possessor, guardian, or custodian of any dog to fail to keep a dog under restraint or control as provided for in this Section." Cherokee County Ordinance Sec. 10-29 (b) (1) provides: "A dog is not considered under restraint or control when it is running at large, whether wearing a collar and tag or not. Reasonable care and precautions shall be taken to prevent a dog from leaving the real property limits of its owner, guardian, possessor, or custodian, and to ensure that . . . [i]t is securely and humanely enclosed within a house, building, fence, pen or other proper enclosure out of which it cannot climb, dig, jump, or otherwise escape from on its own volition."

SE2d 71) (2003), this court held that a dog owner could be held liable for injuries caused by a dog based upon negligent performance of a voluntary undertaking even though there was no evidence that dog had any vicious or dangerous propensities. Id. at 540-541 (1). In that case, a cable television installer was injured by a dog after the homeowner had offered to restrain the dog, but failed to do so. The installer did not get out of his truck to begin work until he received an assurance that all of the dogs on the property would be restrained.

Gray asserts that the clinic "voluntarily imposed regulations and procedures that would protect invitees such as the Plaintiff, but negligently failed to warn of such danger or enforce said regulations and procedures, even to inform the Plaintiff of the existence of such regulations and procedures." The alleged failure of the clinic to inform Gray about the restricted areas of the clinic is fatal to her recovery under a voluntary undertaking theory. One of the essential elements of this claim is reasonable reliance by the injured person upon the voluntary undertaking. Id. at 540. Unlike the plaintiff in *Osowski*, supra, who refused to get out of his truck until the homeowner promised to restrain the dogs, Gray claims in this case that she was not aware of any of the voluntary procedures. She therefore could *not* have relied upon them, and the clinic cannot be held liable through a theory of voluntary undertaking.

8

3. Finally, to the extent Gray asserts that the clinic should be held liable for failing to supervise her as required by their internal procedures, the record shows that her injuries were not proximately caused by any such negligent supervision. At the time of her injury, Gray was under the supervision of Buchanan as required by the clinic's policy, and Gray has failed to show that the clinic had knowledge of any vicious or dangerous propensities of Drago that would have warranted different procedures. Simply put, the clinic could not have foreseen that Drago would bite Gray. See, e. g., *Wright v. Ashe*, 220 Ga. App. 91, 94-95 (469 SE2d 268) (1996) (affirming grant of summary judgment in negligent supervision case because defendant could not reasonably anticipate intervening criminal act).

For these reasons, the trial court erred in failing to grant summary judgment to the clinic on Gray's negligence claims.

*Judgment reversed. Doyle, P. J. and Andrews, J., concur.*