**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE:** Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 17, 2017**

# In the Court of Appeals of Georgia

A17A0824. ST. JOSEPH'S HOSPITAL OF ATLANTA, INC. v.
  GARDNER SEWELL HALL et al.

RICKMAN, Judge.

Gardner Sewell Hall brought a negligence action against St. Joseph's Hospital of Atlanta, Inc. to recover for personal injuries he sustained when he fell in the hospital's visitor parking deck; his wife asserted a claim for loss of consortium. St. Joseph's appeals from the trial court's order denying its motion for summary judgment.[1] For reasons that follow, we reverse.

"A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and

---

[1] This Court granted St. Joseph's application for discretionary appeal.

punctuation omitted.) *El Ranchero Mexican Restaurant v. Hiner*, 316 Ga. App. 115, 116, n.1 (728 SE2d 761) (2012).

Viewed in the light most favorable to Hall, the evidence shows that during the week of February 10, 2014, Atlanta was hit with an ice storm. Hall's wife had a colonoscopy scheduled for February 14, 2014, and Hall called her doctor the night before or early that morning to confirm that the doctor would be there. The morning of February 14, Hall drove his wife to St. Joseph's and let her out in front of the hospital's main lobby. Hall then drove to the east visitor parking deck, where he had been many times before, entering the deck at approximately 8:45 a.m. Hall drove into the deck on a lower, covered level, and proceeded to the upper, uncovered level, where he parked between two cars. He was not aware of any ice on the pavement of the parking deck as he drove into the deck, but deposed, "[t]hat's not to say there was none there." When Hall opened his car door, he did not look for ice or snow before exiting his car, and took approximately three steps before falling on invisible or black ice. He did not see the ice before he fell. Hall sustained injuries to his elbow and shoulder from the fall.

After his fall, Hall was taken to St. Joseph's emergency room. One of the emergency medical technicians who responded to the scene deposed that she had

trouble with her footing between the ambulance and Hall's car. Footage from a surveillance camera in the parking deck, taken shortly after Hall's fall, shows Hall sitting on the ground near his car. The footage also shows that visible ice and snow remained under and around some of the parked cars and around dividers in and outside the parking area, but not in the area where Hall was sitting.

As a general rule, St. Joseph's security officers patrol the visitor parking deck every two hours, with their primary role being to provide security. During inclement weather conditions, the security officers will also look for snow and ice and communicate information about any ice patches they discover to the engineering department. When they discover an ice patch, the officers are trained to wait until engineering arrives to determine what needs to be done. The week of February 10, 2014 was considered a winter weather event at St. Joseph's, and during such an event, employees are not allowed to go home; they sleep at work. On the morning of February 14, 2014, the visitor parking deck was completely closed from 5:00 a.m. until approximately 7:00 a.m. due to snow and ice conditions. That morning, prior to Hall's fall, a security officer patrolled the visitor deck at 2:45 a.m., 5:05 a.m., and 7:13 a.m.

During the week of February 10, 2014, employees in St. Joseph's engineering department patrolled St. Joseph's entire campus every other hour, around the clock. On February 14, several employees in the engineering department worked together to clear the visitor's parking deck of snow and ice. Some employees drove a pick up truck with a spreader to spread sand and salt on the driving lanes of the deck, and other employees spread it by hand in areas that they could not get to with the truck and in parking spaces where cars had pulled out. The morning of February 14, the lead mechanic in the engineering department spread sand and salt with the truck spreader at 3:00 a.m., 5:00 a.m., and 6:00 a.m. At 7:00 a.m., he walked the deck on patrol, using a push spreader to treat the travelable areas, and did not encounter any slick patches or black ice in those areas. Four other engineers were with him at the time, some on foot and others in the truck. Prior to Hall's fall, St. Joseph's was not aware of any other falls on ice outside the hospital during the week of February 10.

Hall and his wife sued St. Joseph's for negligence and loss of consortium. Following discovery, St. Joseph's moved for summary judgment, contending that it had not breached any duty owed to Hall to discover and remove naturally accumulating ice in winter weather, that it lacked knowledge of the ice upon which Hall fell, and that Hall had failed to exercise ordinary care for his own safety. The

4

trial court denied St. Joseph's motion, ruling that jury questions remained as to whether St. Joseph's had superior knowledge of the specific danger of black ice in the upper level of the parking deck and whether St. Joseph's actions in attempting to clear the ice made the icy conditions less obvious.

1. St. Joseph's contends that the trial court erred in holding that questions of fact remained as to whether it had superior knowledge of the patch of black ice on which Hall fell and whether its' remedial efforts to clear the parking deck of snow and ice contributed to the icy conditions.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. This duty of ordinary care requires the owner or occupier to protect the invitee from unreasonable risks of harm of which the owner or occupier has superior knowledge. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). To recover for his injuries, Hall must prove that: (1) St. Joseph's had actual or constructive knowledge of the hazard; and (2) he, despite exercising ordinary care for his own personal safety, lacked knowledge of the hazard due to St. Joseph's actions or to conditions under St.

5

Joseph's control. See *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009).

(a) *Superior knowledge*. Although St. Joseph's and Hall knew that an ice storm had recently occurred, "knowledge of the generally prevailing hazardous conditions is not sufficient to establish actual or constructive knowledge by the hospital or [Hall] of the specific invisible ice hazard on the upper deck which caused the slip and fall." *Columbus Doctors Hosp., Inc. v. Thompson*, 224 Ga. App. 682, 683 (482 SE2d 705) (1997). There is also no evidence that St. Joseph's "had actual knowledge of the invisible ice hazard on the upper deck, despite evidence that the hospital conducted regular inspections of the premises." Id. St. Joseph's general knowledge that melted ice or snow in the parking deck can re-freeze if temperatures drop and that black ice is slippery does not equate to knowledge of the specific ice hazard that caused Hall to fall. Although visible snow and ice remained in areas in and around the parking deck, the evidence does not show that either Hall or St. Joseph's had actual knowledge of the specific invisible ice hazard that caused Hall's fall.

We now consider whether the evidence shows that St. Joseph's had constructive knowledge of the ice hazard. "To establish constructive knowledge, [Hall] must show that (1) a [St. Joseph's] employee was in the immediate area of the

hazard and could have *easily* seen the substance or (2) the foreign substance remained long enough that ordinary diligence by [St. Joseph's] employees should have discovered it." (Citations and punctuation omitted; emphasis in original.) *Pirkle v. Quiktrip Corp.*, 325 Ga. App. 597, 601 (2) (b) (754 SE2d 387) (2014). As to the first factor, the evidence does not show that a St. Joseph's employee was in the immediate area when Hall fell.

As to the second factor,

> [c]onstructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its reasonable inspection procedures.

(Citations and punctuation omitted.) *Petrosky v. Embry Crossing Condo. Assn.*, 284 Ga. App. 354, 356-57 (1) (a) (643 SE2d 855) (2007). In *Petrosky*, this Court held that the condominium association had constructive knowledge of the hazardous icy conditions encountered by Petrosky in the parking lot because the association lacked

7

any inspection procedure and did not inspect the premises on the date of Petrosky's fall. Id. at 357.

Here, however, the evidence shows that, during the week of the winter storm, St. Joseph's had round the clock patrols by the engineering department and security officers to look for snow and ice, and that those patrols continued on the day Hall fell. The engineering department also worked to clear the hospital premises, including the parking decks, of snow and ice. The lead engineer testified that he and four other engineers spread salt and sand in the travelable areas of the parking deck, by truck and by hand, at 7:00 on the morning of February 14 and that he did not encounter any slick patches or black ice in those areas. A security officer also patrolled the deck from approximately 7:13 to 7:25 that morning. St. Joseph's has shown that it had a reasonable inspection procedure in place for the visitor parking deck under the prevailing weather conditions and that the procedure was actually carried out on the day Hall fell. Thus, constructive knowledge of the hazard cannot be inferred based on the lack of a reasonable inspection procedure. See generally *Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1, 7 (4) (720 SE2d 329) (2011) ("[t]he law does not require [an owner or occupier of land] to conduct an inspection that disclose[s] every latent defect on the property. If this were the rule, then proprietors

8

would be absolutely liable for all defective conditions on their property. The law does not impose such absolute liability.") (citations and punctuation omitted).

Hall has not come forward with evidence that St. Joseph's had actual or constructive knowledge of the ice hazard that caused Hall's fall. See *American Multi-Cinema, Inc. v. Brown*, 285 Ga. at 445 (3). Thus, "this case does not present a situation in which [St. Joseph's] knew of the potential hazard and [Hall] did not." *Speaks v. Rouse Co. of Ga.*, 172 Ga. App. 9, 11 (321 SE2d 774) (1984).

(b) *St. Joseph's remedial efforts*. As St. Joseph's points out, in slip and fall cases involving ice in winter weather, we have held that where the accumulation of ice "on a premises is naturally occurring and not attributable to any affirmative action on the proprietor's part, the proprietor has no affirmative duty to discover and remove it in the absence of evidence that it had become an obvious hazard by means other than natural accumulation." (Citation and punctuation omitted.) *Kouche v. Farr*, 317 Ga. App. 277, 278-79 (730 SE2d 45) (2012). The trial court determined that this rule did not apply because St. Joseph's remedial efforts caused ice on the parking deck to unfreeze and refreeze each evening and thus the ice was not simply a result of natural accumulation. But St. Joseph's remedial efforts did not create ice that had not accumulated naturally; the accumulation was ice before it was treated and if the

9

surface did not completely dry before temperatures dropped again, it naturally became ice again. This is not a situation where St. Joseph's created ice that was not already there. Cf. *Martin v. Dunwoody-Shallowford Partners, L.P.*, 217 Ga. App. 559, 561 (2) (c) (458 SE2d 388) (1995) (hazard created by sprinkler use in freezing weather; parking lot owner had constructive knowledge of serious hazard that would continue to be created so long as its sprinklers continued to operate in freezing temperatures).

Nonetheless, "[i]ce forming due to inevitable natural forces unaffected by human agency does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action." (Citation and punctuation omitted.) *Dumas v. Tripps of North Carolina, Inc.*, 229 Ga. App. 814, 816 (495 SE2d 129) (1997). In *Dumas*, there was no evidence that the owner of the parking lot had reasonably inspected the lot for defects and that the ice formation was a new defect of which the owner had no notice or sufficient time to correct. Id. at 816-817. As a result, the court could not say as a matter of law that the owner had complied with its duty to business invitees to keep the premises safe. See id; see also *Kauffman v. Eastern Food & Gas, Inc.*, 246 Ga. App. 103, 105 (3) (539 SE2d 599) (2000) (court erred in granting summary judgment to property owner who presented no evidence of a regular safety inspection procedure and no evidence that any inspections were

done on the date in question). As set forth above, however, St. Joseph's did have a reasonable inspection procedure in place and that procedure was followed prior to Hall's fall on February 14, 2014.

The trial court determined that this case is similar to *Telligman v. Monumental Properties*, 161 Ga. App. 13, 15 (2) (288 SE2d 846) (1982), which involved a slip and fall on an icy sidewalk in front of an entrance to a business. The business owner's maintenance crew took actions to clear the icy conditions on the sidewalk areas, but admittedly made no efforts to remove the ice in front of the entrance where Telligman fell. Id. Under these circumstances, this Court held that the business owner was "at fault" with regard to "any hazardous icy condition existing at *this* entrance and had at least constructive knowledge thereof." (Punctuation omitted; emphasis supplied) Id. That is not the situation presented here as St. Joseph's inspected and treated the parking deck and did not concede that it made no effort to remove ice from the area where Hall fell.

Finally, relying on *Osowski v. Smith*, 262 Ga. App. 538, 540 (1) (586 SE2d 71) (2003), the trial court accepted Hall's argument that because St. Joseph's had voluntarily assumed a duty to patrol the deck and remove ice pursuant to its internal

11

policies and procedures, a jury must determine whether those acts were performed with ordinary or reasonable care. In *Osowski*, a cable television installer was attacked by a homeowner's dog after receiving assurances from the homeowner that he would restrain his dogs. Id. at 538-539. The installer filed suit against the homeowners for negligence and this Court reversed the grant of summary judgment to the homeowners, ruling that a jury question existed "as to whether [the homeowner] explicitly or implicitly agreed to undertake ensuring that the dogs would not pose a risk of harm to Osowski." Id. at 541 (1). Even assuming that the voluntary undertaking theory, which provides that a person may be held liable for the negligent performance of a voluntary undertaking, is applicable here, "[o]ne of the essential elements of this claim is reasonable reliance by the injured person upon the voluntary undertaking." *Abundant Animal Care, LLC v. Gray*, 316 Ga. App. 193, 196 (2) (728 SE2d 822) (2012). Without evidence that Hall was aware of St. Joseph's voluntarily imposed policies and procedures prior to his fall, he could not have relied upon them, and St. Joseph's cannot be held liable based on a theory of voluntary undertaking. See id. at 196-97.

And to the extent that Hall "would have us infer [St. Joseph]'s negligence merely from evidence of [Hall]'s fall in an area [St. Joseph's] treated . . ., proof of

nothing more than the occurrence of the fall is insufficient to show that a person bound to exercise reasonable care as to premises . . . has not done so." (Citation and punctuation omitted.) *Davidson v. Meticulously Clean Sweepers, LLC*, 329 Ga. App. 640, 645 (2) (765 SE2d 783) (2014). Nor does the mere existence of black ice at the spot where Hall fell prove that St. Joseph's was negligent in its exercise of its de-icing duties. See id.

2. St. Joseph's contends that the trial court erred by holding that Hall exercised ordinary care for his own safety as a matter of law. Given our holding in Division 1 that Hall has not shown that St. Joseph's had actual or constructive knowledge of the specific hazard that caused his fall, we need not address this issue.

*Judgment reversed. Ellington, P. J., and Andrews, J., concur.*