**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 8, 2023**

# In the Court of Appeals of Georgia

A23A1122. SUDDARTH et al v. LOUNSBROUGH.

LAND, Judge.

We granted this interlocutory appeal to consider the trial court's denial of John and Caitlin Suddarth (collectively "the Suddarths") motion for summary judgment in Samantha Lounsbrough's action seeking to hold the Suddarths liable for injuries Lounsbrough sustained after she slipped on a pile of leaves and fell down the Suddarths' front steps while delivering a package. The Suddarths argue that the trial court erred in denying summary judgment because they did not have knowledge of the allegedly hazardous condition, that Lounsbrough's knowledge of the condition was equal or superior to the Suddarths', and that Lounsbrough failed to exercise ordinary care. Because Lounsbrough has failed to show that the Suddarths had superior knowledge of the hazard, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." (Citations and punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710, 710 (716 SE2d 796) (2011).

So viewed, the record shows that on Sunday, December 1, 2019, Lounsbrough was working as a rural mail carrier for the United States Postal Service (USPS). Lounsbrough did not have a regular route and was called in to deliver packages on a co-worker's mail route because the USPS was "shorthanded." As part of her route, Lounsbrough stopped to deliver a package at the Suddarths' home at 6:20 p.m., when it was already dark. Lounsbrough had previously delivered mail to the Suddarths' mailbox but had never delivered a package to the home's front porch.

Although it had rained earlier in the day, the rain had stopped around 3:00 p.m. Lounsbrough wore leather boots, which she typically wore to work when it was raining, but recalled that the ground "was not saturated" or "slippery."[1] Lounsbrough

---

[1] John deposed that the driveway and walkway to the front porch were "damp" when he returned home that evening.

parked in the Suddarths' driveway and exited her mail truck. She walked towards the front porch and stone stairway carrying the package and her scanner while "looking at the ground to the best [she] could." As she walked toward the porch, Lounsbrough noticed that "[w]here [she] was walking was covered in leaves and the leaves were crunchy." The porch light was not on, but a doorbell video of the incident shows that portions of the yard and porch were illuminated with holiday decor. Lounsbrough walked partially up the stairs, reached over the remaining steps, and placed the package at the top of the stairs. Lounsbrough then "turned around to walk down[,] . . . slid off the bottom step, and rolled into" a pile of leaves. Lounsbrough deposed that she could not see anything because "[i]t was dark" but that she knew there were leaves on the steps because she "heard them."[2] Lounsbrough stated that the leaves on the porch "could have been" wet because "[i]t rained earlier that day." Lounsbrough did not know if her left foot twisted or slipped when she fell.

Caitlin, who was home alone with the couple's newborn, received a notification on her phone that "there was motion outside" and went to see if Lounsbrough was okay. Lounsbrough asked Caitlin to turn on the porch light so that she could find her

---

[2] Caitlin Suddarth deposed that she did not remember there being any leaves on the steps or on the front porch.

scanner, and Caitlin replied that the light did not work, instead using her cell phone flashlight to help Lounsbrough find her scanner.[3] Eventually, Lounsbrough made it back to her mail truck and finished her route. As a result of the fall, Lounsbrough broke her foot.

At the time of the incident, the Suddarths "primarily" used their garage door to enter and exit their home, but also used their front door "several times a week" and received deliveries to their front door. Caitlin deposed that she had ordered an item for her newborn but did not recall "if [she] was waiting [for that order on] that particular day" and was surprised at the delivery because it was a Sunday. Prior to going outside to check on Lounsbrough, Caitlin did not remember the last time she had gone out on her front porch. Caitlin told her husband about Lounsbrough's fall when he returned home later that evening, and John deposed that either "[a] couple of days after or the following day," he looked at where the fall occurred and did not see any leaves. There are several trees in the front yard, and John deposed that he "clean[ed] up the yard every week" typically on Saturdays, by "blow[ing] everything from the outside to the middle of the yard and . . . mulch[ing] them with the mower"

---

[3] John Suddarth deposed that the light on the front porch was working on the night of the incident and that while they "typically" turned it on at night, the light was not on a timer.

4

for "aesthetic appeal." John did not recall whether he had cleaned up yard debris on the Saturday before Lounsbrough's fall, and no pictures were taken of the porch or steps at the time of Lounsbrough's fall.

Lounsbrough filed a lawsuit against the Suddarths, asserting that the couple was negligent in failing to properly maintain their porch and in failing to warn invitees of its dangerous condition. The Suddarths filed a motion for summary judgment, and after a hearing which was not transcribed, the trial court entered an order denying the Suddarth's motion for summary judgment. Thereafter, the trial court granted the Suddarths a certificate for immediate review, and this Court granted their application for an interlocutory appeal.

1. The Suddarths argue that the trial court erred in denying their motion for summary judgment because there is no genuine issue of material fact as to whether they had knowledge of the allegedly hazardous condition and that Lounsbrough's knowledge was equal or superior to their knowledge. We agree.

Georgia premises liability law imposes liability on a property owner for "injuries [to invitees] caused by [the owner's] failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. "Although the owner of the premises must exercise ordinary care, the owner is not an insurer of an invitee's

5

safety, nor does the mere fact that an accident occurred create a presumption of negligence." (Footnote omitted.) *Thomas v. Deason*, 289 Ga. App. 753, 754-755 (658 SE2d 165) (2008).

"To prevail in a slip and fall case, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the defendant's control." (Footnote omitted.) *Porter v. Omni Hotels, Inc.*, 260 Ga. App. 24, 24-25 (579 SE2d 68) (2003). "The true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury." (Footnote omitted.) *Garrett v. Hanes*, 273 Ga. App. 894, 895 (616 SE2d 202) (2005). More specifically, we have held that in cases concerning falls on "naturally occurring substances," the rule is

> that where the accumulation of [that substance] on a premises is naturally occurring and not attributable to any affirmative action on the proprietor's part, the proprietor has no affirmative duty to discover and remove it in the absence of evidence that it had become an obvious hazard by means other than natural accumulation.

(Citations and punctuation omitted.) *SRA Mgmt., LLC v. Prince*, 362 Ga. App. 636, 639 (869 SE2d 583) (2022). Thus, "[l]iability results only from an owner's failure to

6

exercise ordinary care to take remedial action after notice to him of the defective condition coupled with a failure to take remedial action within a reasonable time." (Citations and punctuation omitted.) Id. at 640.

Here, "[t]here is no evidence that any affirmative action by [the Suddarths] caused the leaves . . . to collect on the steps, and no evidence that [the Suddarths] had actual knowledge of this condition." *Porter*, 260 Ga. App. at 25 (1). Lounsbrough argues that the Suddarths had actual and/or constructive knowledge of the allegedly hazardous condition of the porch because they failed to clear the leaves from the area. John Suddarth's general knowledge that leaves fall on his property and weekly cleaning of his yard, however, does not equate to knowledge of the specific accumulation of leaves that Lounsbrough alleges caused her to fall. See *St. Joseph's Hosp. of Atlanta, Inc. v. Hall*, 344 Ga. App. 1, 3-4 (1) (a) (806 SE2d 669) (2017) (hospital's general knowledge that melted ice or snow in its parking deck can re-freeze and that black ice is slippery was not enough to show that hospital had superior knowledge of the specific ice hazard that caused plaintiff's injuries). Meanwhile, Lounsbrough acknowledged that she "heard" the leaves under her feet as she walked to the Suddarth's front porch, and thus Lounsbrough "had reason to believe that this debris, which fell naturally from trees overhead, would land on all the steps, including

7

the one where [she] fell." *Porter*, 260 Ga. App. at 26 (1). Under these circumstances, Lounsbrough's knowledge was at least equal to the Suddarth's, and the Suddarths were entitled to summary judgment. Id. at 25 (1).

Moreover, even if the Suddarths had a duty to discover and remove the leaves, no evidence shows that they breached their duty because no evidence shows that the leaves remained on the front steps "for a sufficient amount of time that they should have been discovered and removed in a reasonable inspection of the premises[.]" (Citation omitted.) *Cleveland v. Snowdrop Properties, N.V.*, 232 Ga. App. 447, 448 (501 SE2d 546) (1998). John cleaned his property of fallen leaves on a weekly basis and Lounsbrough has provided no evidence that this was unreasonable. Caitlin was home alone with the couple's newborn and could not recall when she had last used the front porch. It is undisputed that it rained that day, and there is no evidence showing how long the leaves were present on the steps. Thus, no evidence in the record shows that the leaves were on the front steps long enough that a reasonable inspection would have discovered them, and the Suddarths cannot be liable on this ground. See id. at 547-548.

Lounsbrough also argues that the Suddarths had actual and/or constructive knowledge of the allegedly hazardous condition of the porch because they failed to

provide proper lighting. A premises owner owes no obligation – even to an invitee – "to illuminate passageways, porches or steps, absent a contractual or statutory duty to do so," and liability may only be imposed "if the lack of lighting prevents the injured party from discovering a dangerous condition of which the owner but not the injured party *should* be aware." (Emphasis supplied.) *Evans v. Parker*, 172 Ga. App. 416, 417 (2) (323 SE2d 276) (1984). Here, Lounsbrough has provided no evidence of a contractual or statutory duty on the part of the Suddarths, and she does not allege that the steps themselves were a dangerous condition she was unable to discover due to poor lighting. Compare *Hatcher v. City of Albany*, 147 Ga. App. 843, 844 (1) (250 SE2d 537) (1978) ("Whether the combination of maintaining *irregular steps* and failing to provide lighting to illuminate the steps constituted negligence was a matter which the trial court should have submitted to the jury") (emphasis supplied). Because there is no genuine issue of material fact as to whether the Suddarths had actual or constructive knowledge of the leaves on their front porch, the alleged failure to provide adequate lighting creates no grounds for liability. See id. (homeowner's failure to provide adequate lighting for social guest's departure did not give rise to liability where guest had equal knowledge of the allegedly hazardous condition). Therefore, the trial court erred in denying summary judgment to the Suddarths.

9

2. As a result of our holding in division 1, we need not reach the Suddarths' remaining enumeration of error.

*Judgment reversed. Barnes, P. J., and Watkins, J., concur*.